In the Matter of Dennis Duane
MILLER, Theresa Rebecca
Miller, Debtors,

BANK ONE OF AKRON,
N.A., Plaintiff,

v.

FARMERS PRODUCTION CREDIT OF
ASHLAND, Defendant.

Bankruptcy No. 682–00208.
Adv. No. 683–0748.

United States Bankruptcy Court,
N.D. Ohio.

Oct. 25, 1984.

E. Jane Bell, Guy, Mentzer & Towne, Akron, Ohio, for plaintiff.

James M. Richard, Reynolds & Richard, Wooster, Ohio, for defendant.

MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

This matter is before the court upon a complaint filed by the plaintiff, Bank One of Akron, N.A. (Bank or plaintiff) on November 10, 1983. The Bank seeks a money judgment for $5,901.59 plus interest, alleging that the defendant, Farmers Production Credit of Ashland (PCA or defendant), has wrongfully sold, and retained the proceeds of, a certain International Harvestor tractor without due regard for the Bank's asserted purchase money security interest in the same collateral.

The complaint eventually came on for trial at which time testimony was heard and the arguments of counsel were presented.

I.

*Statement of the Case*

The debtors, Dennis and Theresa Miller (Miller or debtors), filed their voluntary

petition for relief under Chapter 13 of Title 11 of the United States Code on February 18, 1982. Those proceedings were eventually converted to a liquidation proceeding under Chapter 7 of Title 11 on May 23, 1983.

On April 4, 1983 PCA filed Adversary Case No. 683–0323 in which it sought relief from the bankruptcy stay under 11 U.S.C. § 362. The complaint, while naming the Bank as a party-defendant, was allegedly never served upon it so that no appearance was ever entered to defend on the merits. The court granted PCA's requested relief on May 3, 1983 which triggered the commencement of repossession proceedings against all of the debtors' farm machinery and equipment, including the Model 1486 International tractor.

Ultimately, the Bank filed the within complaint asserting that by virtue of a properly perfected financing statement it has a purchase money security interest in the subject tractor which is superior to any other lien.

## II.

### Statement of Facts

On November 6, 1972, PCA filed financing statements with the Wayne County, Ohio Recorder and the Ohio Secretary of State, perfecting its security interest in all of the debtors' livestock, farm machinery and equipment. Appropriate continuation statements filed in each of the relevant offices have maintained PCA's rights. The usual after-acquired property clause ensured that PCA would have a security interest in any new equipment and offspring that the debtors might obtain subsequent to the date of the original filings.

Some time in December, 1976 Miller signed a purchase agreement with Sterling Farm Equipment, Inc. (Sterling) for the acquisition of a new Model 1486 International Harvestor tractor. Apparently, a tractor with the desired options and attachments was not available in Sterling's inventory and a factory order was placed for anticipated delivery in early 1977.

According to the testimony, the tractor was eventually delivered to Sterling in mid-February, 1977. Instead of taking immediate possession of the equipment, the debtors were forced to wait for certain modifications to be made and the usual dealer preparation to be completed. The debtors were permitted by Sterling as a goodwill gesture to take the tractor home before any security agreements were signed or moneys obtained from the Bank. The exact date of possession is hotly disputed. The Bank asserts that the delivery date was March 19, 1977 while PCA contends that the debtors had possession of the tractor at least a week to ten days before that date.

The record clearly establishes that the debtors signed their credit application with the Bank on March 16, 1977. They executed a security agreement and promissory note for the financing of the tractor on March 18, 1977. On March 25, 1977 the Bank perfected its security interest by filing in the offices of the Wayne County, Ohio Recorder and the Ohio Secretary of State. The court must decide which of the competing security interests in the tractor enjoys priority.

## III.

### Conclusions of Law
#### A.

Ohio's adaptation of the Uniform Commercial Code (UCC) includes the priority provisions of Article Nine. In particular, the Ohio Revised Code at section 1309.-31(E)(1) provides:

(E) In all cases not governed by other rules stated in this section, *including cases of purchase money security interests which do not qualify for the special priorities set forth in divisions (C) and (D) of this section,* priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(1) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the

time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection. (Emphasis added)

That is, with certain enumerated exceptions, first in time to file is also first in right. The noted exceptions create the special priority rights enjoyed by a later filing if certain express prerequisites are met. Such later security interest must be of a purchase money nature in order for either of the exceptions to operate.

The Revised Code defines a purchase money security interest at section 1309.05 to be one which is:

(A) taken or retained by the seller of the collateral to secure all of [or] part of its price; or

(B) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

There is no serious dispute that the Bank claims a purchase money security interest in the tractor. Clearly, the evidence demonstrates that on March 16, 1977 the debtors applied for, and, two days later, on March 18, they obtained $22,000 from the Bank to finance their purchase.

It is the simultaneous disbursement of funds used for the purchase of the tractor along with the extension of credit that forms the present consideration vital to a secured party's claim of a purchase money security interest. It is in turn, that present consideration which constitutes the "value" contemplated by the statutory definition. *United States v. Cahall Brothers*, 674 F.2d 578 (6th Cir., 1982). *See also*, Official Comment No. 2 to Revised Code Section 1309.-05.

Given that the Bank has a legitimate claim to a purchase money security interest in the tractor, does it similarly enjoy the superior status provided for in section 1309.31(E) of the Revised Code quoted above? If it does not, then of course by virtue of PCA's earlier filing, the Bank's claimed security interest must be subordinated.

### B.

It is first maintained by PCA that the tractor is inventory collateral as defined by the UCC. Consequently, PCA argues that the filing and notice requirements of Revised Code section 1309.31(C) govern:

A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if:

(1) The purchase money security interest is perfected at the time the debtor receives possession of the inventory; and

(2) The purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory:

(a) Before the date of the filing made by the purchase money secured party

. . .

The fact that the Bank has not complied with the statute's notice requirements is undisputed. *See, Written Stipulation of Uncontested Facts No. 10* filed June 4, 1984. Such failure, if PCA's premise that the tractor is inventory collateral is valid, would be fatal to the Bank's claim that it has a properly perfected purchase money security interest.

Inventory is a defined term in the UCC. Section 1309.07(D) of the Revised Code provides that goods are:

"inventory if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process, or materials used or consumed in a business. *Inventory of a person is not to be clas-*

*sified as his equipment.* (Emphasis added)

The Official Comment following this provision notes:

3. The principal test to determine whether goods are inventory is that they are held for immediate or ultimate sale. Implicit in the definition is the criterion that the prospective sale is in the ordinary course of business. Machinery used in manufacturing, for example, is equipment and not inventory even though it is the continuing policy of the enterprise to sell machinery when it becomes obsolete....

Nevertheless, PCA contends that Revised Code section 1301.02(C), which permits the parties to vary the effect of the UCC by agreement, applies. In particular, it is urged that since the debtors included the tractor on their annual "inventory equipment list" to PCA that it necessarily follows that it should be considered inventory. *See,* Defendant's Exhibits 1–5.

The court has been presented with no evidence of intent to vary the UCC provisions and holds that the definition in section 1309.07(D) controls.

It is the traditional view that goods are "equipment" when they are fixed assets or have a relatively long use, and "inventory" when they are to be consumed in the production of an end product held or prepared for eventual sale. *See, In re Fibre Glass Boat Corporation,* 324 F.Supp. 1054 (S.D. Fla., 1971). Such an approach would seem to serve us well here. Therefore, the court finds the International tractor to be equipment and the notice requirements of O.R.C. § 1309.31(C) are thus inapplicable.

### C.

▉ It remains to be determined whether the Bank's purchase money security interest complies with the remaining "special priority" provision of Revised Code section 1309.31(D) which reads:

... (D) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter....

The Bank argues that the date of possession should be regarded as the date on which the debtors became obligated on the note, March 18, 1977. Therefore, the filing on March 25 falls within the statute's ten-day time period and creates a validly perfected security interest.

PCA, on the other hand, takes the position that possession under the UCC means simple physical possession. The evidence suggests that the debtors had the use of the tractor at least one week prior to obtaining financing on March 18. Therefore, PCA contends, the March 25 filing was not within the ten-day grace period and the Bank's security interest does not gain priority over PCA's earlier filing.

Possession is one of the few key terms employed throughout the UCC for which it provides no exact definition. However, it is generally accepted that a fundamental purpose of the UCC was to create a precise, consistent guide for commercial transactions. The court should be guided by similar considerations. *In re Automated Bookbinding Services, Inc.,* 471 F.2d 546, 551–552 (4th Cir., 1972).

Two views have apparently emerged. On the one hand, there are those decisions which equate possession with the time the debtor becomes obligated to perform. For example, in *Brodie Hotel Supply, Inc. v. United States,* 431 F.2d 1316 (9th Cir., 1970) it was held that notwithstanding a debtor's use of restaurant equipment for five months before the seller perfected its security interest by filing, a valid purchase money security interest was created to the detriment of a bank which held a prior perfected chattel mortgage on all of the debtor's equipment.

*Brodie* enjoys a significant following. In *Commerce Union Bank v. John Deere Industrial Equipment Co.,* 387 So.2d 787 (Ala., 1980) a filing delay of forty days after delivery had no effect in establishing

the seller's priority over an earlier filing covering all present and after-acquired property. As in *Brodie*, the court reasoned that the buyer did not become a debtor until the purchase agreement was executed for it concluded that prior to that time, the seller had no definable security interest that could be perfected by filing nor had the debtor any assignable legal interest in the collateral. *See*, also: *In re Ultra Precision Industries, Inc.*, 503 F.2d 414 (9th Cir., 1974); *In the matter of Prior Bros., Inc.*, 29 Wash.App. 905, 632 P.2d 522 (1981); *Ranier National Bank v. In Land Machinery Co.*, 29 Wash.App. 725, 631 P.2d 389 (1981).

The opposing view holds that possession can only be equated with the debtor's simple, physical control over the collateral. In *In re Automated Bookbinding Services, Inc.*, 471 F.2d 546 (4th Cir., 1972) the court was presented with a situation where the seller and debtor executed purchase and security agreements approximately five months before the delivery of the first components of the collateral. Terms of the agreement provided that acceptance of the equipment would not occur until the debtor acknowledged satisfaction with its installation and operation. Yet, despite the fact that the seller filed its financing statements within that time period, an earlier filing was held to have priority in the equipment. The court reasoned that a thirteen day delay between the delivery of the initial components and the filing was fatal to the seller's claim of a valid purchase money security interest because ostensible ownership could only be demonstrated through the debtor's simple, physical control and the date for triggering possession was independent of the debtor's acceptance of the equipment. *Accord, In re Relpak Corp.*, 25 B.R. 148 (Bankr.E.D.N.Y., 1982); *In re Ivy*, 37 B.R. 285 (Bankr.E.D.Ky., 1983).

In this circuit, these divergent views were given serious consideration in *James Talcott, Inc. v. Associates Capital Company, Inc.*, 491 F.2d 879 (6th Cir., 1974). There the debtor agreed to purchase two heavy tractors contingent upon obtaining outside financing. Eventually the debtor and seller negotiated a lease/purchase option agreement whereby the seller would finance the sale. The tractors were actually delivered before any agreements were formally executed. The terms, however, provided that payments were to begin retroactively to the delivery date. The seller filed more than ten days after the debtor obtained possession but within ten days of the execution of the lease agreements. On appeal, the Sixth Circuit held that the seller's interests in the tractors were subordinated to a chattel mortgagee who filed prior to the purchase.

The court found *Brodie, supra* to be distinguishable because the parties in *Talcott* had intended for the payments to begin on the date of delivery. As Judge Peck noted at page 882 of *Talcott*, "[T]he only question that remains is when did Getz [the purchaser of the tractors] receive possession of the collateral as a 'debtor' as that term is defined in the context of Ohio Rev. Code § 1309.31(D)." Contrary to the factual situation in *Brodie*, where the ultimately successful purchase money mortgagee was owed no performance of an obligation secured by the collateral until the agreement was entered into, the purchaser in *Talcott* was bound from the date of first possession.

We must ask the same question as Judge Peck poses in *Talcott*: When was Miller possessed of this tractor as a "debtor?" Clearly, the only evidence in that regard is the date of the promissory note and security agreement, March 18, 1977, regardless of Sterling's generosity in allowing Miller to take the tractor sometime prior to that date. The filing, then, on March 25, 1977, brings the bank within the terms of section 1309.31(D) of the Revised Code.

## IV.

### Conclusion

The court, finding that the Bank has a validly perfected security interest as contemplated in section 1309.31(D) of the Revised Code, finds also that such security

interest is entitled to priority over the claimed interest by PCA under section 1309.31(E). Consequently, the allegations contained in the Bank's complaint as filed on November 10, 1983 are well taken and judgment in the amount of $5,901.59 plus interest will be entered on behalf of the plaintiff. An order consistent with the findings contained in this Memorandum will be entered forthwith.