A91A1285, A91A1286. CORIM, INC. v. BELVIN et al.; and vice versa.
(414 SE2d 491)

COOPER, Judge.

At an auction on January 28, 1989, appellee Oscar Belvin ("Belvin") purchased and took possession of a John Deere cotton picker for $35,000 by check drawn on the account of his daughter, Sherri Belvin. On February 7, 1989, Belvin borrowed $35,000 from appellee Crossroads Bank of Georgia ("Crossroads"), and the following day, a check for said amount was deposited into Sherri Belvin's ac-

count with Crossroads. Crossroads then filed a financing statement on February 10, 1989, which described its security interest as "Purchase Money" and listed Belvin as debtor and the cotton picker as collateral. On December 29, 1989, appellant filed two garnishment actions against Belvin based on an April 21, 1986 judgment obtained against him in the amount of $26,603.79 plus interest and an April 29, 1986 writ of fieri facias. The first action named Crossroads as garnishee, and the latter named Miller-Godley Auction Co. ("Miller-Godley") as garnishee. On December 30, 1989, at an auction held by Miller-Godley, Belvin sold the cotton picker for $40,131.86. Miller-Godley paid $60,449.75 into the court's registry, which sum represented proceeds from the sale of the cotton picker and other farm equipment owned by Belvin and his wife. Belvin and Crossroads traversed appellant's affidavit, contending that some of the property sold at the auction was owned by Belvin's wife and that the proceeds from the sale of the cotton picker were subject to Crossroads' perfected purchase money security interest. The garnishments were combined into one action in superior court, and following discovery, appellant moved for summary judgment on the ground that its judgment lien was superior to Crossroads' security interest. The motion was granted in part and denied in part, the trial court concluding that with regard to the proceeds from the cotton picker, Crossroads had the superior interest. We granted appellant's petition for interlocutory appeal to consider the question of whether Crossroads had a purchase money security interest superior to appellant's judgment lien. Belvin cross-appealed the trial court's determination that appellant was entitled to proceeds from the sale of certain tractors which were secured by a financing statement in favor of the FHA.

## Case No. A91A1285

1. Appellant contends that the loan to Belvin by Crossroads was not so closely allied with the purchase of the cotton picker so as to establish a purchase money security interest. OCGA § 11-9-107 (b) provides that "[a] security interest is a 'purchase money security interest' to the extent that it is . . . [t]aken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." In defense of the motion for summary judgment, Crossroads submitted an affidavit by its president, W. D. Watson ("Watson"), who stated that several days before Belvin purchased the cotton picker the two agreed that Crossroads would finance the purchase of the machine in the event Belvin was the high bidder at the auction. Since the amount needed to purchase the cotton picker had not been determined, final arrangements could not be made until after the auc-

tion. Watson stated further that the arrangements made by Belvin prior to January 28, 1989, and the final loan on February 7, 1989 were all a part of the same transaction. The trial court concluded that because of the nature of the purchase, as an auction purchase and the fact that the purchase price would have to be determined by bidding, it was reasonable to finalize the terms of the loan after the purchase. Moreover, the loan enabled Belvin to purchase the cotton picker and although there were a number of days between the purchase and the finalization of the loan, the purchase and the loan were sufficiently "closely allied" to create a purchase money security interest in accordance with *United States v. Hooks*, 40 Bankr. 715, 721 (M.D. Ga. 1984). We agree. The evidence is uncontroverted that steps taken by Belvin and Crossroads before and after the auction were parts of "a single financing arrangement" which enabled Belvin to acquire rights in the cotton picker, and the loan was in fact used for that purpose in accordance with OCGA § 11-9-107 (b). *Hooks*, supra at 721. Thus, the trial court did not err in determining that Crossroads had a purchase money security interest in the cotton picker.

2. Appellant also argues that its judgment lien has priority over Crossroads' purchase money security interest under OCGA § 11-9-310 (1) (d) and that the trial court erred in determining that because the financing statement was timely filed in accordance with OCGA § 11-9-301 (2), Crossroads' security interest is superior to appellant's lien. When read together, the two provisions allow purchase money secured lenders, perfected within 15 days of the debtor's possession of the collateral, to take priority over lien creditors, including judgment lien creditors, whose rights arise during the period between attachment of the security interest and the time of filing. While the statutory definition of lien creditor comtemplates that its right would arise by virtue of "attachment, levy or the like" by the lien creditor (OCGA § 11-9-301 (3)), in Georgia, a prior perfected judgment lien floats and attaches to property acquired by the judgment debtor after rendition and docketing of the judgment.[1] *Kollock v. Jackson*, 5 Ga. 153 (2) (1848); *Cohutta Mills v. Hawthorne Indus.*, 179 Ga. App. 815 (2) (348 SE2d 91) (1986). On the other hand, a security interest attaches when "the debtor has signed a security agreement which contains a description of the collateral," "[v]alue has been given" and "[t]he debtor has rights in the collateral." OCGA § 11-9-203 (1). Inasmuch as the judgment lien attached on January 28, 1989, when Belvin acquired the cotton picker, and the security interest did not attach until February

---

[1] It is apparent that in adopting the definition of "lien creditor" from the "Official Text" of the Uniform Commercial Code, the Georgia legislature did not contemplate the potential priority problems, not present in the instant case, which could arise as a result of Georgia's recognition of floating judgment liens. See 39 Mercer L. Rev. 83, 102-104 (1987).

8, 1989 and was filed on February 10, 1989, OCGA § 11-9-301 (2) is inapplicable. Furthermore, because Belvin acquired the property, at which time the judgment lien attached, before Crossroads secured attachment of its security interest, appellant's judgment lien has priority over Crossroads' purchase money security interest.

The trial court, citing *Federal Land Bank of Columbia v. Bank of Lenox*, 192 Ga. 543 (16 SE2d 9) (1941), concluded that a "longstanding practice in Georgia . . . to prefer purchase money creditors as long as they timely perfect their interest" provided a basis for preferring Crossroads' purchase money security interest over the judgment lien. In recognition of that preference, OCGA § 11-9-312 (4) provides: "A purchase money security interest in collateral other than inventory has priority over a conflicting *security interest* in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 15 days thereafter." (Emphasis supplied.) Crossroads' financing statement was filed 13 days after Belvin took possession of the cotton picker; therefore, its purchase money security interest was perfected in accordance with OCGA § 11-9-312 (4). However, appellant's judgment lien does not fall within the statutory definition of a "security interest," which is "an interest in personal property or fixtures which secures payment or performance of an obligation." OCGA § 11-1-201 (37). Moreover, the preference recognized by the court in *Lenox* was for purchase money mortgages or deeds *to land* over prior liens. *Lenox*, supra at 556. This special priority for purchase money security interests has been recognized in connection with the purchase of land (*Aetna Cas. &c. Co. v. Valdosta Fed. &c. Assn.*, 175 Ga. App. 614 (4) (333 SE2d 849) (1985)); however, the sale of land is not governed by the Uniform Commercial Code (*Newton v. Allen*, 220 Ga. 681, 684 (141 SE2d 417) (1965)). The preference for purchase money security interests is reflected in the UCC in OCGA §§ 11-9-301 (2) and 11-9-312 (4), which we have determined are not applicable to the particular facts of this case. Based on the foregoing, we conclude that the court erred in determining that Crossroads' security interest in the cotton picker was superior to appellant's judgment lien and in denying partial summary judgment to appellant.

3. In its third enumeration of error, appellant contends that Crossroads' consolidation and renewal of several loans to Belvin destroyed any possible purchase money interest. However, this issue was not raised before the trial court and cannot be considered on appeal. *Venture Design, Ltd. v. Original Appalachian Artworks*, 197 Ga. App. 432 (3) (398 SE2d 781) (1990).

*Case No. A91A1286*

In this cross-appeal, Belvin appeals the trial court's grant of partial summary judgment to Corim, Inc. ("Corim") and its award to Corim of the remaining proceeds from the sale of two tractors in the Miller-Godley auction on December 30, 1989. Belvin contends that the tractors were subject to a March 4, 1986 lien held by McCranie Motor and Tractor, Inc., and a March 23, 1982 lien held by FHA. The property was auctioned for the sum of $22,750.00, $6,111.11 of which was disbursed to Belvin and McCranie Motor and Tractor, and the balance was paid into the court's registry. The trial court determined that the proceeds from the sale of the tractors were subject to FHA's security interest because FHA's interest was prior to Corim's fi fa. However, the court went on to find that because FHA did not respond to the suit despite having been notified of the liquidation of the collateral and because FHA did not assert a claim to the proceeds, the court assumed that FHA settled with Belvin on the tractors, and Corim therefore was entitled to the proceeds. However, the trial court's conclusion on this issue is not supported by the record.

At the outset we note that FHA was not a party to this proceeding (OCGA § 18-4-95), and the record reveals that the only document served on FHA was Corim's request for production of documents. Nowhere in that request does it state the nature of the case (i.e., liquidation of collateral in which FHA had an interest); it only requests documents reflecting a security interest of FHA in any farm equipment owned by Belvin. " 'In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. (Cits.)' [Cit.]" *944, Inc. v. Ga. State Bank*, 198 Ga. App. 893, 894 (1) (403 SE2d 466) (1991). The record contains a financing statement filed on March 23, 1982 in Macon County, which lists Belvin as debtor, FHA as secured party and the tractors at issue as collateral. A continuation of this financing statement was filed in Macon County on March 4, 1987. The trial court recognized that FHA's perfected interest was superior to Corim's, and there is no evidence in the record demonstrating satisfaction of this debt. Construing the evidence in the proper light, we see no basis for a deviation from the well established rule that the creditor with the older judgment takes priority over the junior creditor in the distribution of garnishment funds. *C & S Nat. Bank v. Wray*, 144 Ga. App. 769 (242 SE2d 365) (1978). Accordingly, the trial court erred in granting summary judgment to Corim as to the proceeds from the sale of the tractors.

*Judgments reversed. Birdsong, P. J., and Pope, J., concur.*

Decided November 18, 1991 —
Reconsideration denied December 20, 1991 — 

*Geiger & Pierce, James N. Geiger,* for appellant.

*Byrd & Anthony, Garland T. Byrd, Walker, Hulbert, Gray & Byrd, David G. Walker, James C. Marshall,* for appellees.

*Martin, Snow, Grant & Napier, Edward J. Harrell,* amicus curiae.