S92G0471. CROSSROADS BANK OF GEORGIA et al. v. CORIM, INC.

(418 SE2d 601)

BENHAM, Justice.

This case is before us pursuant to the grant of a writ of certiorari to the Court of Appeals. See *Corim, Inc. v. Belvin,* 202 Ga. App. 396 (414 SE2d 491) (1991). The Court of Appeals determined that the preference for purchase money security interests reflected in the Uniform Commercial Code (OCGA § 11-9-201 et seq.) was not applicable in this case and held that Corim's 1986 properly recorded judgment lien against the debtor had priority over Crossroads' 1989 perfected purchase money security interest. We disagree and reverse.

1. OCGA § 11-9-310 (d)[1] establishes that a duly rendered judgment of a court having jurisdiction takes priority over a perfected security interest in collateral only if

execution or notice of such . . . judgment is duly recorded in the place designated by statute applicable thereto, and if record thereof is made prior to the perfection of the subject security interest, and if the subject security interest is not a purchase money security interest entitled to priority under subsection (2) of Code Section 11-9-301.

OCGA § 11-9-301 (2) provides:

If the secured party files with respect to a purchase money security interest before or within 15 days after the debtor re-

---

[1] The 1992 General Assembly amended OCGA § 11-9-310 (d), effective July 1, 1992, to read:

A . . . duly rendered judgment of a court having jurisdiction shall have the same priority with regard to a security interest as it would have if the . . . judgment were a conflicting security interest within the meaning of Code Section 11-9-312 or an encumbrance within the meaning of Code Section 11-9-313, which conflicting security interest was perfected by filing or which encumbrance arose at the time the tax lien or judgment was duly recorded in the place designated by statute applicable thereto.

Ga. L. 1992, pp. 1028, 1029. Inasmuch as § 11-9-312 (4) gives priority to a timely perfected purchase money security interest in collateral other than inventory over any other security interest therein, this legislation, which treats a judgment lien as a security interest, provides the clarification requested by Professor James C. Marshall in his survey article on commercial law, 39 Mercer L. Rev. 83, 102-104 (1987). The 1992 amendment is not applicable to the litigation before us inasmuch as the amendment affects substantive rights. OCGA § 1-3-5; *Polito v. Holland,* 258 Ga. 54 (365 SE2d 273) (1988); *F. H. Ross &c. v. White,* 224 Ga. 324 (161 SE2d 857) (1968).

ceives possession of the collateral, he takes priority over the rights of . . . a lien creditor which arise between the time the security interest attaches and the time of filing.

The Court of Appeals determined that the reference to OCGA § 11-9-301 (2) in § 11-9-310 (d) incorporated the priority scheme of § 11-9-301 (2) into § 11-9-310 (d), thereby giving priority to a judgment lien that pre-dated the debtor's acquisition of the collateral;[2] appellant and amici curiae assert that the reference merely describes the type of purchase money secured creditor who has priority over the judgment lien.

Resolution of the ambiguity requires judicial construction of the statute, and the court is statutorily required to "look diligently for the intention of the General Assembly . . ." (OCGA § 1-3-1 (a)), with the goal of interpreting the statute "to effectuate as nearly as possible the will of the legislature." *Blanchard v. Blanchard*, 261 Ga. 11 (401 SE2d 714) (1991). The history of the legislation is an important tool in ascertaining the legislative intent. *International Minerals & Chem. Corp. v. Bledsoe*, 126 Ga. App. 243 (190 SE2d 572) (1972).

The General Assembly passed Georgia's version of the Uniform Commercial Code in order to "simplify, clarify, and modernize the law governing commercial transactions," to "permit the continued expansion of commercial practices through custom, usage, and agreement of the parties," and to "make uniform the law among the various jurisdictions." OCGA § 11-1-102 (2) (a)-(c). Initially, the General Assembly enacted the uniform version of § 9-310 of the UCC, thereby giving priority over perfected security interests to liens securing claims arising from work intended to enhance or preserve the value of the collateral. See Ga. L. 1962, pp. 156, 405; Official Comment to § 9-310. Prior to the effective date of the 1962 law, however, the General Assembly repealed § 9-310 and replaced it with a nonuniform version which provided that a purchase money security interest had priority over a judgment lien. Ga. L. 1963, pp. 188, 199.[3] After the 1963 version of § 9-310 was seen as providing priority to unperfected and untimely perfected purchase money security interests, § 9-310 (d) was amended to its present form, including the reference to § 11-9-301 (2). Ga. L. 1978, pp. 1081, 1111. The Georgia Revisers' Comments noted that the amendment specified that a purchase money security interest would have priority over a prior judgment lien only to the

---

[2] In Georgia, a judgment lien is often described as "floating" because the lien covers property acquired by the debtor subsequent to the rendition and execution of the judgment against him. OCGA § 9-12-80; *Kollock v. Jackson*, 5 Ga. 153 (2) (1848).

[3] The nonuniform version of § 11-9-310 gave "unconditional priority" to a perfected security interest over a judgment lien. OCGA § 11-9-301, Ga. Revisers' Comments, para. 3.

extent permitted by § 11-9-301 (2), which established a 15-day grace period for filing the purchase money security interest. Thus, the 1978 amendment subordinated unperfected and untimely-perfected purchase money security interests to a judgment lien. Without this clarification, the Revisers noted, "it is arguable that [§ 11-9-310 (d)] contradicts § 9-301 (2)."

The Court of Appeals' construction of § 11-9-310 (d) embodies the Revisers' fears. As a result, the separate priority schemes for judgment lienholders and for lien creditors have become unnecessarily entangled. A judgment lienholder has been equated with a "lien creditor,"[4] and that does not effectuate the will of the legislature. If a judgment lienholder becomes a lien creditor by merely obtaining a judgment and recording it on the general execution docket, then § 11-9-310 (d), which establishes a priority scheme for judgment liens, is superfluous because all judgment lienholders would be lien creditors, who have a priority scheme set forth in § 11-9-301 (2).[5] As " '[a] legislative body should always be presumed to mean something by the passage of an act[,]' " (*Wilson v. Bd. of Regents*, 246 Ga. 649, 650 (272 SE2d 496) (1980)), we cannot endorse a statutory interpretation that renders a statute meaningless. See *Holcomb v. Gray*, 234 Ga. 7, 9 (214 SE2d 512) (1975).

The 30-year legislative history of § 11-9-310 evinces a legislative desire to give a timely perfected purchase money security interest priority over a judgment lien. Over that time span, the legislature has attempted to achieve the stated goals of the UCC — to simplify, clarify, and modernize the law of commercial transactions in Georgia, and to make Georgia commercial law uniform with that of the various jurisdictions which have adopted the UCC. Realization of the latter goal has come about, insofar as the priority scheme is concerned, by adopting and modifying a nonuniform § 11-9-310 in order to accommodate Georgia's somewhat unique "floating" judgment lien. We conclude that, by referring to § 11-9-301 (2) in the 1978 version of OCGA § 11-9-310 (d), the legislature intended to make judgment liens subordinate to purchase money security interests perfected within the grace period contained in § 11-9-301 (2).

---

[4] A "lien creditor" is statutorily defined as "a creditor who has acquired a lien on the property involved by attachment, levy or the like. . . ." OCGA § 11-9-301 (3).

[5] Obtaining a judgment against a debtor and filing that judgment on the general execution docket does not give the judgment lienholder "lien creditor" status. The judgment lienholder must file an attachment or levy upon the after-acquired property (see OCGA §§ 18-3-30; 18-3-31) in order to become a lien creditor. Furthermore, the terms "attaches" and "attachments" cannot be used interchangeably. While a judgment lien "attaches" to property acquired by the debtor after rendition and docketing of the judgment (*Kollock v. Jackson*, 5 Ga. 153 (2) (1848)), "attachment" is a formal legal process that must be undertaken before the judgment lienholder is elevated to "lien creditor" status.

*Judgment reversed. Weltner, C. J., Bell, P. J., Clarke, Fletcher, Sears-Collins, JJ., and Judge Philip F. Etheridge concur. Hunt, J., disqualified.*

DECIDED JULY 16, 1992.

*Walker, Hulbert, Gray & Byrd, David G. Walker, Byrd & Anthony, Garland T. Byrd, James C. Marshall,* for appellants.

*James N. Geiger, Charles A. Aultman, Herbert L. Wells, James C. Brim, Jr., R. Avon Buice,* for appellee.

*Long, Aldridge & Norman, W. Stell Huie, Richard A. Hills, Jr., Jones, Day, Reavis & Pogue, W. Rhett Tanner, Dale S. Voyles, Macey, Wilensky, Cohen, Wittner & Kessler, Richard P. Kessler, Groover & Childs, Denmark Groover, Jr.,* amici curiae.