## A98A1541. CITIZENS BANK OF AMERICUS v. FEDERAL FINANCIAL SERVICES, INC.
### (509 SE2d 339)

BEASLEY, Judge.

On stipulated facts, Federal Financial Services, Inc., sought a judgment declaring that it has a purchase money security interest with priority over the earlier perfected security interest of Citizens Bank of Americus in the same logging skidder. The court entered judgment in Federal Financial's favor. The bank appeals.

Where conflicting security interests are perfected by the filing of financing statements,[1] the general rule under OCGA § 11-9-312 (5) is that they rank according to priority in time of filing. But under OCGA § 11-9-312 (4), a purchase money security interest in collateral other than inventory has priority over a previously perfected security interest in the same collateral, if the purchase money security interest is perfected "at the time the debtor receives possession of the collateral or within 15 days thereafter." The issue is, which comes first, Citizens or Federal? The answer lies in the determination of the triggering event, quoted above, which establishes the time period during which the purchase money security interest holder must file a financing statement.

The stipulated facts are as follows. Charles H. Logging, Inc.,

---

[1] See OCGA § 11-9-302 et seq.; *Continental Oil Co. &c. v. Sutton*, 126 Ga. App. 78, 79, n. 1 (189 SE2d 925) (1972).

began negotiations to purchase a logging skidder from Pioneer Machinery, Inc., sometime prior to December 5, 1996. On December 5, the logging company borrowed $22,520 from Citizens Bank of Americus and signed a promissory note in favor of the bank and a UCC financing statement listing the skidder as collateral. The bank filed the financing statement the next day. The logging company used the loan proceeds to satisfy debts. It did not possess or own the skidder.

About two weeks later, on December 18, Pioneer delivered the skidder to the company for demonstration purposes only. Toward the end of December, the company decided to purchase the skidder from Pioneer. On December 30, the company indicated its intention by executing a contract of sale and invoice which were subject to the company's obtaining adequate physical damage insurance showing Pioneer and Federal Financial Services, the intended purchase money lender, as loss payees. The contract was also expressly subject to signature by Pioneer, the seller.

A little more than a month thereafter, on February 6, 1997, the company acquired ownership of the skidder after obtaining the required insurance. The same day, it executed a note to Federal Financial, signed a UCC financing statement listing the skidder as collateral, and Federal Financial remitted the loan proceeds to Pioneer in payment of the purchase price. Federal Financial filed the financing statement on February 10.

It is uncontested that Citizens Bank's perfected security interest in the skidder does not qualify as a purchase money security interest because the funds it lent were not in fact used by the logging company to purchase the skidder.[2] Whether Federal Financial's purchase money security interest achieved priority over the bank's previously perfected security interest depends on the date of the event statutorily described as "the time the debtor receive[d] possession of the collateral."

The eventual purchaser received possession of the collateral on December 18 for a specific purpose and thereby became its bailee.[3] The skidder was still owned by the seller and, insofar as the bailee's creditor bank was concerned, the skidder was property which was to become acquired.

The bailee became a purchaser on February 6, thereby acquiring ownership of the property, and its status as bailee ceased. It paid for the skidder by way of its loan that day from the purchase money lender, which paid the seller directly. At that time the purchaser

---

[2] See UCC § 9-107 (b), discussed infra.
[3] See *In the Matter of Prior Bros., Inc.*, 632 P2d 522, 527-528 (Wash. App. 1981).

became debtor to the purchase money lender. The purchaser already had possession of the collateral on that day, so it is then that the two factors (indebtedness for purchase price and possession) first coincided. The lender had 15 days from that date to file the financing statement, which it did.

In any given situation with respect to the particular priority with which this case is concerned, in analyzing when the time-triggering event occurred, several variables must be considered. Identification must be made of the parties and their roles, the legal relationship of the parties insofar as the transaction or transactions are concerned, and the whereabouts of the collateral. The seller may be the lender as well. The purchaser may thus be a debtor to the same party. The purchaser may gain possession before, at, or after the sale and before, at, or after it becomes obligated for the purchase money loan. The lender of the purchase money may lend the purchase money before, at, or after its debtor acquires possession of the property. The interplay of these variables is demonstrated in a number of cases brought to our attention by the parties.

According to the commentators, these cases apply two divergent standards for determining when a debtor receives possession of collateral within the meaning of UCC § 9-312 (4).[4] One line of cases applies what is referred to as the "obligation" standard, and the other utilizes what is known as the "physical control" standard.

In *Brodie Hotel Supply v. United States*,[5] the lead case applying the "obligation" standard, the buyer of a restaurant took possession of it and began operations before concluding negotiations with the seller for purchase of the restaurant equipment. Meanwhile, the purchaser borrowed money from a bank and executed a chattel mortgage secured by the restaurant equipment. The bank perfected its security interest by filing a financing statement in a timely fashion. Shortly thereafter, the purchaser bought the equipment from the seller and gave him another chattel mortgage on the equipment to secure the unpaid purchase price. The seller delivered the bill of sale and the purchaser executed the chattel mortgage the same day. The seller filed the financing statement within the next fifteen days, as required by the local version of the UCC, but over five months after the purchaser acquired physical possession of the restaurant equipment.

The Ninth Circuit concluded that the seller properly perfected his purchase money security interest. The court arrived at this conclusion by interpreting the term "debtor," as used in UCC § 9-312 (4),

---

[4] See Cornman, When Is a Debtor "In Possession" Under U.C.C. § 9-312 (4)?, 19 Ariz. St. L. J. 261 (1987).

[5] 431 F2d 1316 (9th Cir. 1970).

as " 'the person who owes payment or other performance of the obligation secured,' " which is the meaning given the term in the definitions section of Article 9, UCC § 9-105 (d).[6] The filing of the financing statement by the seller was therefore timely, because the purchaser did not owe performance of an obligation secured by the restaurant equipment until he received the bill of sale and executed the chattel mortgage in favor of the seller.

In *Brodie,* the bank's assignee argued that the term "debtor" is used in the § 9-312 (4) sense merely to identify the individual in possession of the property.[7] This argument was based on the fact that UCC § 9-402 (1) likewise uses the term "debtor" while expressly providing that a financing statement may be filed before a security agreement is made or a security interest otherwise attaches. The court was not persuaded.

Subsequent cases in various jurisdictions have followed the *Brodie* line of reasoning and held that a purchase money security interest has priority over a previously perfected security interest, where the buyer obtains physical possession of the property before becoming obligated to make the purchase, and the purchase money lender's perfection of its security interest is timely when measured from the point when the purchaser incurs the purchase money obligation which the property secures.[8]

In *North Platte State Bank v. Production Credit Assn. of North Platte,*[9] the lead case applying the "physical control" standard, a rancher purchased cattle but did not pay for them until approximately two months after they had been delivered to him. The bank which provided the funds used to make the purchase filed its financing statement six days after the rancher executed a note and security agreement in its favor, but over two months after he had obtained physical possession of the cattle. Under those circumstances, the Nebraska Supreme Court held that the prior security interest took precedence over the bank's.

The court began its analysis by asking whether the bank even had a purchase money security interest in the cattle.[10] Under UCC § 9-107, "[a] security interest is a 'purchase money security interest' to the extent that it is[:] (a) taken or retained by the seller of the collateral to secure all or part of its price; or (b) taken by a person who by making advances or incurring an obligation gives value to enable

---

[6] Id. at 1319.

[7] Id. at 1318.

[8] See *In the Matter of Ultra Precision Indus.*, 503 F2d 414 (9th Cir. 1974); *In the Matter of Miller*, 44 BR 716 (N.D. Ohio 1984); *In the Matter of Hooks*, 40 BR 715 (M.D. Ga. 1984); *In the Matter of Prior Bros., Inc.*, supra.

[9] 200 NW2d 1 (Neb. 1972). Also see *In re Henning*, 69 BR 348 (N.D. Ill. 1987).

[10] 200 NW2d at 4.

the debtor to acquire rights in or the use of collateral if such value is in fact so used." The court in *North Platte* held that the bank did not have a purchase money security interest.[11] First, it was not the seller of the cattle. Second, the funds it provided had not enabled the rancher to acquire rights in or use of the cattle, in that under UCC § 2-401 (2) title to the cows passed to the purchaser when they were delivered to him.

The court proceeded to state that a further and even more fundamental reason why the bank could not succeed in establishing priority was that the purchaser of the cattle obtained possession when he acquired physical control of them.[12] It thereby rejected the argument that the rancher did not have "possession" of the cattle in the § 9-312 (4) sense until the loan was made by the bank and the security agreement signed. The court reasoned that the rancher had been the "debtor" of the prior creditor all along.

Other courts have followed the reasoning in *North Platte* where the buyer of property incurs an obligation secured by the property when physical possession is acquired.[13]

In the most recent case cited by the parties, *Color Leasing 3 v. Fed. Deposit Ins. Corp.*,[14] the federal bankruptcy court in Rhode Island has correctly recognized that although the reasoning employed in the two lines of cases is at variance, the cases are only "superficially divergent" insofar as concerns the ultimate disposition of each.[15]

The *Brodie* line of cases, similar to the present one, involved sales on approval.[16] This resulted in holdings that the § 9-312 (4) grace period did not begin to run until the purchase money obligation was assumed. *North Platte* and cases following it involved situations in which the buyer or lessee owed performance of an obligation secured by the property at the time physical possession was acquired. This resulted in holdings that the time period allowed by the statute

---

[11] Id. at 5-6.

[12] Id. at 6.

[13] See *In the Matter of Automated Bookbinding Svcs.*, 471 F2d 546 (4th Cir. 1972); *James Talcott, Inc. v. Assoc. Capital Co.*, 491 F2d 879 (6th Cir. 1974); *In re Ivie & Assoc.*, 84 BR 882 (N.D. Ga. 1988).

Contrary to arguments advanced by Citizens Bank, we did not adopt the "physical control" standard in *Corim, Inc. v. Belvin*, 202 Ga. App. 396, 398 (2) (414 SE2d 491) (1991). There, the question of whether the § 9-312 (4) grace period begins to run from the time the date the buyer obtains possession of the property or when the purchase money loan is made was not an issue.

[14] 975 FSupp. 177, 185 (D. R.I. 1997).

[15] Id. at 186.

[16] A noted UCC commentator cites the "physical possession" cases with approval, while agreeing that the "obligation standard" should be applied to sale-on-approval cases. 9 Anderson, Uniform Commercial Code, § 9-312-84, pp. 516-517.

began to run at that time. In none of the cases was it held that the running of the grace period was triggered before the debtor owed performance of the secured obligation.

Here, it is undisputed that Federal Financial is the only creditor holding a purchase money security interest, and that it perfected this interest by filing its financing statement within 15 days after the logging company acquired ownership of the skidder and executed the note evidencing its obligation to pay the purchase price. Under these circumstances, it has priority.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 9, 1998 —
RECONSIDERATION DENIED NOVEMBER 30, 1998.

*Ellis, Easterlin, Peagler, Gatewood & Skipper, Benjamin F. Easterlin IV*, for appellant.

*Jones, Cork & Miller, Sharon H. Reeves*, for appellee.