**In re IVIE & ASSOCIATES, INC., Debtor.**

**IRON PEDDLERS, INC., Movant,**

**v.**

**IVIE & ASSOCIATES, INC. and Herbert C. Broadfoot, Trustee, Respondents.**

**Bankruptcy No. A86–09329–SWC.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 17, 1988.

Barry Staples, Marietta, Ga., for debtor.

Herbert C. Broadfoot, II, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for trustee.

Grant T. Stein, Alston & Bird, Atlanta, Ga., for Chattahoochee Bank (Creditor).

Tip Carroll, Abney, Tate & Mallernee, Atlanta, Ga., for Iron Peddlers, Inc. (Creditor).

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Iron Peddlers, Inc. ("IPI") is before the court on its motion for relief from the automatic stay under Section 362 of the Bankruptcy Code. The Chattahoochee Bank ("Bank") has filed an objection based on its claim that its security interest has

priority over IPI's security interest. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(G) and (K).

For the reasons set forth herein, the court sustains the Bank's objection and concludes that the Bank's security interest has priority over IPI's purchase money security interest as to two pieces of equipment. IPI holds a perfected purchase money security interest with priority over the Bank's claim as to the remaining item of equipment and its motion for relief from stay is granted as to this item. The court's findings of fact and conclusions of law are as follows.

### Findings of Fact

The evidence in this matter is basically undisputed. The evidence shows that on February 21, 1985 the Bank filed a Uniform Commercial Code financing statement to perfect its security interest in all equipment owned by Ivie & Associates, Inc. ("Ivie"). The Bank's security interest extended to after-acquired property. (*See* Chattahoochee Bank Exhibit # 1).

On May 23, 1985, June 12, 1985, and June 17, 1985 respectively, certain equipment identified as three Terex Scrapers, serial numbers 17UOT66686 ("Scraper # 1), 17UOT66682 ("Scraper # 2), and 17UOT58386 ("Scraper # 3) was delivered to Ivie by IPI. IPI and Ivie did not enter into a written agreement at the time of actual delivery of this equipment.

Scraper # 1, delivered to Ivie on May 23, 1985, was the subject of a financing statement filed June 27, 1985. Scraper # 2, delivered to Ivie on June 12, 1985, was the subject of a financing statement filed June 27, 1985. Scraper # 3, delivered to Ivie on June 17, 1985, was the subject of a financing statement filed August 5, 1985. These financing statements identified Ivie as the debtor, IPI as the secured party, and NCNB as the assignee. (*See* IPI Exhibits # 6 and # 7). The evidence showed that the security interests were reassigned from NCNB to IPI after Ivie defaulted in payment thereunder.

On July 31, 1985, IPI and Ivie executed three lease agreements. (*See* IPI Exhibits # 8 through # 10). These lease agreements were dated and made effective as of the dates of delivery of each scraper, which were prior in time to the dates of execution of these agreements. These lease agreements contained a provision whereby Ivie had an option to convert the leases to a sale and purchase the scrapers. If converted, all payments made under the leases would be applied to the subsequent purchase price, less a 15% interest factor.

On September 26, 1985, Ivie and IPI executed an agreement for the sale of the scrapers to Ivie for $200,236.41 (IPI Exhibit # 12). On October 16, 1985, a second financing statement was filed by IPI on the scrapers. (IPI Exhibit # 11).

When the scrapers were IPI inventory, they were subject to a security interest held by NCNB in all of IPI's inventory. IPI sold the scrapers to Ivie in the ordinary course of IPI's business. These sales were known to and authorized by NCNB.

Ivie's debt to IPI is $80,105.00 in principal, plus $12,498.00 in accrued interest. The value of the three scrapers was stipulated by IPI and the trustee for Ivie to be less than the amount of IPI's claim. The evidence before the court as to value was the testimony of Mr. Nevins, an officer of IPI, who acknowledged that he had not seen the equipment recently but gave his opinion of value at $60,000.00 to $75,000.00. The court finds the value to be less than the amount of IPI's claim.

A consent order had previously been entered into in this case on April 6, 1987 between IPI and Ivie providing adequate protection to IPI for its alleged secured claim. The consent order stated that IPI had a perfected purchase money security interest in the scrapers. IPI argued that the consent order established that IPI held priority in and to the three scrapers and that the Bank was bound thereby. However, there is no evidence in the record that the Bank was served with notice of the hearing on IPI's original motion or the terms and conditions of the consent order in that contested matter. Further the

884

Bank was not a party to the motion nor the order.

## CONCLUSIONS OF LAW

■ In examining the issue of notice the Supreme Court has stated as follows:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Failure to give notice violates "the most rudimentary demands of due process of law." *Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965). Because the Bank did not have notice of and was not a party to the prior consent order, the Bank is not bound by the terms thereof and that order is not res judicata as to any issue between IPI and the Bank. *In re Birmingham Reverse Discrimination Employment Litigation,* 833 F.2d 1492, 1498–99 (11th Cir.1987).

IPI seeks relief from the stay with regard to these three scrapers. The Bank objected and contends that its security interest in the three scrapers has priority over that of IPI. The general rule in this regard is found at O.C.G.A. Section 11–9–312(5)(a), which provides as follows:

In all cases not governed by other rules stated in this Code section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this Code section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter

when there is neither filing nor perfection.

The Bank perfected its security interest in all of Ivie's equipment including after-acquired property on February 21, 1985. That security interest extends to and includes the three scrapers that are in question. On the other hand, IPI did not acquire a security interest in the three scrapers until sometime after February 21, 1985. In fact, the three scrapers were not even delivered to Ivie until various times in May and June 1985. Thus, it is clear that the Bank's security interest is prior in time to that of IPI. Under the general rule of O.C.G.A. Section 11–9–312(5)(a) the Bank's interest would take priority over IPI's.

However, O.C.G.A. Section 11–9–312(4) is an exception to this general rule. That section provides as follows:

A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 15 days thereafter.

IPI holds a purchase money security interest in the three scrapers pursuant to O.C.G.A. Section 11–9–107. The issue, however, is whether that interest was *perfected* within fifteen days from the time that Ivie, the debtor, received possession of the three scrapers. If IPI perfected its security interest within fifteen days therefrom, then IPI would have priority over the Bank's security interest pursuant to O.C.G.A. Section 11–9–312(4). On the other hand, if IPI failed to perfect its security interest within fifteen days, then the Bank would have priority over IPI's security interest pursuant to the first in time rule of O.C.G.A. Section 11–9–312(5)(a).

The key question is when did Ivie obtain "possession" of the scrapers within the meaning of O.C.G.A. Section 11–9–312(4). The Bank argues that Ivie obtained possession when IPI delivered the scrapers to Ivie. On the other hand, IPI argues that, although Ivie obtained technical possession of the scrapers on delivery, Ivie obtained

possession within the meaning of O.C.G.A. Section 11–9–312(4) when the parties entered into the respective lease agreements.

The Bank contends that *James Talcott, Inc. v. Assocs. Capital Co.*, 491 F.2d 879 (6th Cir.1974) controls in determining this issue while IPI counters and argues that *United States v. Hooks (In re Hooks)*, 40 B.R. 715 (Bankr.M.D.Ga.1984) governs. The court has examined the law on this matter and has determined that *Talcott* is controlling in the case at bar. *See also Finance Co. of America v. Hans Mueller Corp. (In re Automated Bookbinding Services, Inc.)*, 471 F.2d 546, 551–53 (4th Cir. 1972); *In re Henning*, 69 B.R. 348, 351 (Bankr.N.D.Ill.1987).

In *Talcott*, the debtor granted Talcott, Inc. a security interest in "all fixtures, equipment, chattels, machinery … and collateral of every kind, *now or hereafter owned*" (emphasis in original). *Talcott*, 491 F.2d at 880. Talcott, Inc. perfected its security interest by properly filing its financing statement.

Thereafter, Highway Equipment Company ("Highway") delivered equipment to the debtor. Subsequent to delivery, Highway entered into two separate equipment lease agreements with the debtor. An option to purchase addendum was attached to the lease agreements. Highway filed financing statements on this equipment within ten days of the execution of each agreement, but more than ten days after delivery to the debtor.[1] Both agreements dated back to the time of delivery. *Talcott*, 491 F.2d at 881.

Highway eventually assigned its security interest to Associates Capital Company, Inc. ("Associates"). The debtor later failed to make the required payments and Associates repossessed the equipment. Prior to a public sale of the equipment, Talcott, Inc. filed suit claiming priority in the equipment. *Talcott*, 491 F.2d at 880–81.

The District Court found that Talcott, Inc. had priority in the equipment and granted summary judgment in their favor. On appeal, the Sixth Circuit stated that the only question was "when did Getz [the debtor] receive possession of the collateral as a 'debtor'." The Sixth Circuit found the lower court's analysis most convincing and affirmed the District Court's holding which stated:

> It would be a frustration of this purpose [certainty in commercial transactions under the U.C.C.] to hold that a purchase money secured party can deliver goods to his debtor, delay indefinitely before entering into a security agreement which binds the debtor retroactively as of the delivery date, and still obtain a perfected security interest by filing within ten days of the agreement.

*Talcott*, 491 F.2d at 882–83.

The Sixth Circuit found the critical fact was that the agreements provided that the rent began as of the dates of delivery. They agreed with the District Court that debtor obtained possession on delivery and thus, in order to perfect a purchase money security interest in the equipment, Associates had to perfect within ten days of delivery. *Talcott*, 491 F.2d at 883.

On the other hand, IPI argues that *In re Hooks, supra*, controls. In *Hooks*, the Farmers Home Administration properly perfected a security interest in Mr. Hooks' livestock. The security agreement contained an after-acquired property clause. Subsequently, Hooks considered purchasing cows from Mr. Avery which were encumbered by a security interest held by the Madison Production Credit Association ("PCA"). Hooks took possession of the cows for several weeks to milk and inspect them before entering into an agreement with PCA. Hooks decided to buy the cows and entered into an agreement that granted PCA a security interest in the cows. PCA filed a financing statement within fifteen days of the agreement, but more than fifteen days after Hooks actually took possession of the cows. The issue was when

---

**1.** The creditor in that case was required to perfect his interest within ten days from the time that debtor received possession of the collateral in order to have priority over a conflicting security interest in the same collateral. In the case at bar, the Georgia statute provides for a fifteen day period to perfect. [O.C.G.A. Section 11–9–312(4)].

Hooks took possession of the cows. *Hooks,* 40 B.R. at 716–19.

The court in *Hooks,* citing *National Acceptance Co. v. Community Bank (In re Ultra Precision Industries, Inc.),* 503 F.2d 414 (9th Cir.1974), held, in that instance, that the buyer took possession for purposes of O.C.G.A. Section 11–9–312(4) at the time of the decision to buy, rather than at the time technical possession of the goods was taken. The court reasoned that the buyer did not become a "debtor" as defined by O.C.G.A. Section 11–9–105(1)(d), until the buyer decided to purchase the goods and executed the security agreement. *Hooks,* 40 B.R. at 721. This rationale led the court to conclude that Hooks did not take "possession" of the cows until he and PCA entered into an agreement. Thus, PCA's purchase money security interest was timely perfected since only three days elapsed between the time of the agreement and the filing of the financing statement. *Hooks,* 40 B.R. at 722.

*Hooks* is clearly distinguishable from *Talcott* as well as the instant case. The court in *Hooks,* in holding that the buyer took "possession" for purposes of O.C.G.A. Section 11–9–312(4) when the security agreement was executed, emphasized that Mr. Hooks "milked and cared for the cows only for the purpose of determining whether he wanted to buy them." *Hooks,* 40 B.R. at 722. The court thus found critical that the technical possession prior to execution of the security agreement was merely for inspection purposes on an approval basis. The evidence before this court does not establish any such agreement. To the contrary, the evidence shows a lease with option to purchase which dates from the time debtor took possession of each item of equipment. *Hooks* is thus distinguishable from the case before the court.

■ Of critical import to the court in *Talcott* were the lease agreements which specified that rent would begin as of the date of delivery to the debtor. Likewise, in the subject case, the lease agreements specifically dated back to the time of delivery when Ivie took possession. Accordingly,

this court determines that Ivie acquired possession of the three scrapers for purposes of O.C.G.A. Section 11–9–312(4) at the time they were delivered by IPI, rather than the time that Ivie and IPI entered into the lease agreements for the three scrapers. In the present case, the facts are virtually identical to *Talcott.* Scraper # 1 was delivered to Ivie on May 23, 1985 and a financing statement was filed on June 27, 1985. Scraper # 2 was delivered to Ivie on June 12, 1985 and a financing statement was filed on June 27, 1985. Scraper # 3 was delivered to Ivie on June 17, 1985 and a financing statement was filed on August 5, 1985.

Because IPI did not file its financing statement on Scrapers # 1 and # 3 within 15 days of the time debtor took possession, as required by O.C.G.A. Section 11–9–312(4), IPI failed to timely perfect its purchase money security interest ("PMSI") in these scrapers. Thus, the Bank's prior security interest in equipment, including after-acquired property, has priority over IPI's purchase money security interest in Scrapers # 1 and # 3 pursuant to O.C.G.A. Section 11–9–312(5)(a). As a result, IPI's motion for relief from stay as to these two scrapers will be denied.

On the other hand, Ivie obtained possession of Scraper # 2 on June 12, 1987. IPI filed a financing statement to perfect its interest in that scraper within fifteen days therefrom on June 27, 1987. Because it timely perfected its purchase money security interest in Scraper # 2, IPI has priority over the Bank pursuant to O.C.G.A. Section 11–9–312(4). Since the value of this scraper is less than IPI's claim and is not necessary for an effective reorganization, the court grants IPI's motion for relief from stay as to Scraper # 2. Accordingly, it is

ORDERED that the Bank's security interest in Scrapers # 1 and # 3 has priority over IPI's purchase money security interest, and shall be dealt with pursuant to that security interest; and IPI's motion for relief from the automatic stay as to Terex Scrapers, serial numbers 17UOT66686

("Scraper # 1) and 17UOT58386 ("Scraper # 3) is DENIED, and it is

FURTHER ORDERED that IPI's purchase money security interest in Scraper # 2 has priority over the Bank's security interest, and IPI's motion for relief from the automatic stay as to Terex Scraper, serial number 17UOT66682 ("Scraper # 2) is GRANTED.

IT IS SO ORDERED.