**In re O'HARA BROTHERS, INC., Debtor.**

**Bankruptcy No. 92–14730S.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 15, 1993.

Christine C. Shubert, Tabernacle, NJ, trustee.

Matthew H. Krekstein, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for trustee.

Pauline K. Morgan, Philadelphia, PA, for debtor.

Wendy G. Rothstein, Pearlstein/Salkin Associates, Landsale, PA, for J.I. Case Credit Corp.

Kevin W. Walsh, Adelman Lavine Gold & Levin, Philadelphia, PA, for Union Nat. Bank & Trust Co. of Souderton.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA, U.S. trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A.  INTRODUCTION

The matters before the court in the above-captioned voluntary Chapter 7 bankruptcy case present issues regarding the priorities of conflicting security interests in certain equipment owned by O'HARA BROTHERS, INC. ("the Debtor") between Union National Bank & Trust Co. of Souderton ("the Bank"), which holds an uncontested blanket lien covering, *inter alia*, the equipment in issue; and J.I. Case Credit Corp. ("Case"), which claims to have pur-

chase money security interests in the equipment. We find that Case has complied with the strictures of 13 Pa.C.S. § 9312(d), which provides it with a priority over the Bank "if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter" as to all of the equipment in issue except one backhoe. As to that backhoe, which is incidentally the most valuable single piece of equipment in issue, we find that the Debtor had possession of the collateral, in the capacity of a lessor-debtor as defined by 13 Pa.C.S. § 9105(a), for several months prior to Case's obtaining a security interest in it, placing that security interest outside of the scope of § 9312(d).

## B. PROCEDURAL AND FACTUAL HISTORY

On August 3, 1992, shortly after the suicide of its youthful owner, the Debtor, a contractor, filed this case. CHRISTINE C. SHUBERT, ESQUIRE ("the Trustee"), was appointed on August 10, 1992.

On September 25, 1992, the Bank filed its first motion for relief from the automatic stay, seeking permission to pursue non-bankruptcy remedies to obtain possession of certain motor vehicles and other property, including all machinery and equipment of the Debtor, in which it claimed a blanket lien. After reporting a settlement of this motion at a hearing on the motion on October 29, 1992, the Trustee filed a motion seeking approval of a stipulation ("the Stipulation") settling the Bank's motion by conducting an auction sale of the Debtor's secured property.

The matter presently before us for decision, Case's motion seeking relief from the automatic stay to foreclose upon numerous pieces of equipment whose purchases from a related seller were financed through five separate transactions with Case ("the Motion"), was filed on November 9, 1992. Case also filed an Objection to the settlement between the Trustee and the Bank to the extent that the auction purported to include the equipment regarding which it claimed purchase money security interests.

A hearing on the Objection and the Motion were continued, at the requests of the parties, until February 18, 1993.

At the outset of the hearing, Case withdrew its claim of secured status as to a backhoe which it financed in its first contract with the Debtor of September 30, 1987, conceding that it had not timely filed a renewal certificate as to this security interest. *See* 13 Pa.C.S. § 9403(b). The parties stipulated to the validity of the Bank's security interests in the equipment, and to the dates that Case filed the financial statements relative to its other four contracts with the Debtor. Dean Leonetti, Case's sales manager, provided brief supplemental testimony.

In the first of the four remaining transactions in issue, the Debtor, by a retail installment sales contract dated November 30, 1989 ("Contract I"), financed, through Case, the purchase of a Case Roller, Model No. W252 ("Roller I"). However, Leonetti testified that the Debtor had received possession of Roller I pursuant to a "sale on approval," or a short term rental arrangement contemplating a future sale, on or about August 9, 1989, at which time Case filed UCC–1 appropriate financing statements with the Pennsylvania Department of State ("the State") and the Prothonotary of Montgomery County ("the Prothy").

The second transaction involved a retail installment sales contract of August 31, 1990 ("Contract II"), in which the Debtor financed, through Case, the purchase of another Case Roller, Model No. W252 ("Roller II"), and a general 89DOW trailer ("Trailer I"). Case filed appropriate UCC–1 financing statements with respect to Roller II with the Prothy on August 29, 1990, and with the State on August 31, 1990. Case retained the original certificate of tile to the Trailer. Leonetti initially stated that he believed that Roller II had been subject to a "sale on approval" or rental prior to Contract II, but he retracted that testimony when noting that the filing dates were at or about the date of the contract.

In the third transaction, the Debtor financed a rental installment sales contract of October 31, 1991 ("Contract III"), in

which it purchased a Case 680H Loader Backhoe ("Backhoe I"), a Case W50 Roller ("Roller III"), and two Case SL2 Tampers. Case filed proper UCC–1 financing statements with respect to the equipment subject to this contract with the State on November 10, 1991, and with the Prothy on November 15, 1991. Leonetti testified that he could not be certain that there was no "sale on approval" or rental of this equipment, but ultimately concluded that the fact that the filing date was after the Contract date made this an unlikely possibility.

Finally, the Debtor entered into a retail installment sales contract dated December 31, 1991 ("Contract IV"), which it financed through Case, in connection with its purchase of a Case 580K Loader Backhoe ("Backhoe II"), an Alitec Planer ("the Planer"), a Case 1102 Pad Food Roller ("Roller IV"), and a general 35GSL Trailer ("Trailer II"). Leonetti testified that the Debtor received possession of Backhoe II "probably six months" prior to the date of Contract IV pursuant to a "sale on approval" or rental agreement, despite the fact that no filings regarding Backhoe II had preceded Contract IV. He also testified that the Debtor received possession of the Planer on January 23, 1992, and received possession of the Roller IV and Trailer II on January 2, 1992. Finally, it was agreed that Case filed proper UCC–1 financing statements with respect to all of the equipment involved in Contract IV other than Trailer II with the State and the Prothy on January 22, 1992, and that it retained the original certificate of title to Trailer II.

Leonetti also testified without rebuttal regarding the value of the equipment, which, except as to Contract I, he valued at far less than the balances due under the respective Contracts. As to Contract I, Leonetti valued Roller I at $3,800, while the balance on the Contract was $3,232.83.

By Order of February 19, 1993, we memorialized the parties' agreement to submit Briefs in support of their respective positions on or before March 1, 1993 (Case), and March 8, 1993 (the Bank and the Trustee). On March 5, 1993, we executed an agreed Order granting the Stipulation set-

tling the Bank's motion for relief, *see* page 704 *supra,* but excluding from the auction any property in which it was determined that Case had a valid first priority security interest. Case and the Bank submitted timely Briefs. The Trustee, although she answered Case's motion, proffered no submission, which leads us to conclude that she is not vigorously defending against the Motion. We note that she is not operating the Debtor's business, but intends to liquidate the Debtor's assets. Therefore, she has not proposed to make any payments to Case pursuant to the terms of the Contracts.

## C. DISCUSSION

As we noted at the outset, resolution of these disputes requires us to interpret 13 Pa.C.S. § 9312(d), a provision of the Pennsylvania Uniform Commercial Code ("the UCC") which states as follows:

> A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds *if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter* (emphasis added).

While Case, in its Brief, expressed a belief, similar to that of this court, that its priorities as to only Roller I and Backhoe II were in issue, the Bank appears to contest Case's priorities in all or most of the equipment. We conclude that there is very little merit in the Bank's contentions except as to Roller I and Backhoe II.

With respect to Contract II and Contract III, the Bank argues that Case failed to meet its burden of proving that it perfected its security interest within the proscribed 20–day period because Leonetti was not absolutely certain that there had been no prior "sale on approval" or other lease-like arrangement with respect to this equipment prior to the execution of the Contracts. We fail to find such a great degree of lack of reliability in Leonetti's testimony that we would be inclined to reject his final assessment that no lease or rental of the equipment in issue preceded Contracts II

and III. Leonetti was a credible, even-handed witness, as he candidly admitted Case's prior "sales on approval" of both Roller I and Backhoe II. If Leonetti were inclined to attempt to bend the truth to Case's advantage, it is doubtful that he would have volunteered information regarding the prior "sale on approval" of Backhoe II. There was no documentary evidence suggesting such an arrangement (as in the case of Roller I, where the filing date preceded the contract date by several months). Moreover, Backhoe II was valued by Leonetti at $22,000, making it the most valuable single piece of equipment in issue. Hence, his candor was costly to Case.

From our observation, Leonetti appeared unaware of the potential legal effects of Case's prior "sales on approval" of the equipment and therefore he was in no sense inclined to misrepresent these transactions to the benefit of Case. Neither the Bank nor the Trustee produced any documentary or other evidence tending to rebut any assertions made by Leonetti as to the circumstances surrounding execution of the contracts or the value of the equipment. In sum, we found Leonetti's testimony totally credible, and we reject the Bank's challenges to Case's priorities regarding the equipment referenced in Contract II and Contract III on the basis of this testimony.

■■■ The Bank attacks Case's claim of priority as to Roller I on the ground that the Debtor's possession of Roller I preceded its execution of the security agreement manifested in Contract I by three months. However, we find that the important fact is that the filing of a financing statement regarding Roller I occurred at the time of the Debtor's initial possession of that item. The law of this Circuit is that a financing agreement can operate as a security agreement, as long as it is appropriately executed by both parties. *In re Bollinger Corp.*, 614 F.2d 924, 927–29 (3rd Cir.1980). Moreover, as the Bank admits, the UCC specifically allows that "[a] financing statement may be filed before a security agreement is made or a security interest otherwise at-taches." 13 Pa.C.S. § 9402(a). The limited case law addressing the subject suggests that a filing which coincides with possession satisfies 9312(d), even if a security agreement is not executed until some time thereafter. *See In re Ivie & Associates, Inc.*, 84 B.R. 882, 886 (Bankr.N.D.Ga.1988); and *In re Ivy*, 37 B.R. 285, 289–90 (Bankr. E.D.Ky.1983).

Two policy arguments support the propriety of Case's procedures in obtaining a purchase-money security interest in Roller I. Firstly, the significance of filing is providing notice of Case's claim of a purchase money security interest to interested third parties, such as the Bank. Here, notice by filing *was* provided to third parties at the time that the Debtor came into possession of Roller I. That filing would appear to be all that should have been necessary for § 9312(d) to have served its practical purpose.

Secondly, a contrary result would leave Case with a Hobson's Choice as to how to properly handle a situation where a "sale on agreement" or other lease-like arrangements of a piece of equipment preceded an installment sale contract for that same equipment. Case handled the similar Roller I and the Backhoe II situations differently. Since we find that it failed to proceed properly in attempting to perfect its security interest in Backhoe II, because it failed to file its security interest at the time that the Debtor came into possession of this item per a "sale on approval," *see* pages 706–708 *infra*, we find it inconsistent to fault it for filing a financial statement at the time that the Debtor obtained possession of Roller I under such an arrangement.

In its post-trial Brief, the Bank appears to confine its challenge to Case's priority of its security interests in the equipment purchased by the Debtor in Contract IV to Backhoe II. Presumably, it agrees that Case's security interests in the Planer, Roller IV, and Trailer II were perfected in compliance with § 9312(d). We agree.

Therefore, all that remains at issue as to Contract IV is the validity of Case's claim of security interest prior to the Bank in

reference to Backhoe II. The parties appear to agree that there is a split of authority on the issue of whether "possession," for purposes of § 9312(d), is measured (1) from the date that a debtor comes into *initial* possession of the secured property; or (2) from the date that a debtor comes into possession of the property *as owner*. In support of its position that the date that the debtor obtains ownership is more significant, Case cites to *In re Ultra Precision Industries, Inc.*, 503 F.2d 414 (9th Cir.1974) (possession measured from the date that a prospective purchaser agreed to the terms of a sale, not from date that it began holding the property under a "reasonable testing period" prior to its purchase); *Brodie Hotel Supply, Inc. v. United States*, 431 F.2d 1316 (9th Cir.1970) (possession measured from the date of a contract to purchase certain equipment, not from the date that the ultimate buyer took possession of the equipment by agreement during purchase negotiations); and *In re Hooks*, 40 B.R. 715, 720–22 (Bankr.M.D.Ga.1984) (possession measured from the date that a loan to purchase certain cows closed, not from the date that the debtor began taking care of the cows to inspect and milk them in order that he could determine whether he wanted to buy them). *See also In re McHenry*, 71 B.R. 60, 63–64 (Bankr.N.D.Ohio 1987) (possession of automobile measured from the date that the debtor signed the note to purchase it, not from a prior date on which she was given use of the vehicle).

The Bank, meanwhile, cites to the following cases: *James Talcott, Inc. v. Associates Capital Co.*, 491 F.2d 879 (6th Cir.1974) (possession measured from the date that the debtor obtained possession under a lease-purchase agreement, not the date that he chose to purchase it under that agreement); *In re Automated Bookbinding Services, Inc.*, 471 F.2d 546, 551–53 (4th Cir.1972) (possession measured from the date that all parts of the equipment purchased were delivered to the debtor, not from the date of assembly of the parts); and *In re Relpak Corp.*, 25 B.R. 148, 151–53 (Bankr.E.D.N.Y.1982) (possession occurred when equipment was delivered to

debtor). *See also Ivie & Associates, supra*, 84 B.R. at 884–86 (the date that the debtor came into possession of equipment under a lease agreement controls rather than the date that a separate security interest for purchase of the equipment was executed); and *In re Henning*, 69 B.R. 348, 350–51 (Bankr.N.D.Ill.1987) (the date that the debtor took possession of cows, though under uncertain terms, controls over the date that the financing statement for the cows was executed).

We believe that there is an important distinction between the facts of the first line of cases cited by Case and the instant matter. In each of these cases, the courts found that the obligor did not become a "debtor," as defined in 13 Pa.C.S. § 9105(a), until the execution of the respective purchase agreements. This is because, in each case, it was not established that the respective obligors had any liability to pay for the property in issue prior to the execution of the purchase agreements or financing statements in issue.

■ However, "debtor" is defined broadly in § 9105(a) to include any "person who owes payment or other obligation secured, whether he owns or has right in the collateral, ..." A lessee of equipment, such as the Debtor was when coming into possession of Backhoe II under the "sale on approval" arrangement, is a "debtor" under this definition. Therefore, the reasoning of the first line of cases, in which the respective courts found that possession was not initially taken by the obligors in the capacities of "debtors," cannot be applied here.

■ The case most factually analogous to the instant case is *Ivie & Associates, supra*, which falls into the second line of cases, cited by the Bank. The vagueness of Leonetti's testimony regarding the conditions under which the Debtor initially obtained possession of Backhoe II brings to mind the facts of *Henning, supra*, 69 B.R. at 350, in which the absence of an explicit agreement regarding the debtor's obligations to pay for possession of the cows was found to create a presumption of delivery of title at the time of initial delivery of

the cows to the debtor. The instant facts are distinct from those of *Hooks*, where the court found that there was an agreement that the debtor would *not* pay for the cows during the time of his inspection of them. Similarly, in *Ultra Precision, Brodie Hotel Supply*, and *McHenry*, the courts found no liability on the part of the debtor to pay for use of the property in issue prior to the formulation of a purchase contract.

The policy arguments which supported Case's position as to Roller I, *see* page 706 *supra*, can be turned against it as to its position regarding Backhoe II. No interested third party, including the Bank, was put on notice of Case's potential purchase-money security interest at the time that the Debtor came into possession of Backhoe II, as in the case of Roller I. If Case acted properly in recording its security interest in Roller I at the time that it entered into a "sale on approval" transaction with the Debtor pursuant to which a sale of the equipment to the Debtor was contemplated at some indefinite point in time, then it is difficult for it to argue that it also acted properly when it handled the Backhoe II transaction entirely differently.

Therefore, we conclude that Case does not have a security interest in Backhoe II entitled to a priority over that of the Bank. The Motion must hence be denied as to that item.

However, as to the other property, Case is entitled to the relief which it seeks in the Motion. The Trustee has not suggested that she has made, or intends in the future to make, payments to Case for any of the equipment under any of the Contracts. A failure to make payments, especially with no promise of resumption of payments in the future, is a "substantial factor" to be weighed in considering the right of a secured creditor to relief from the automatic stay in a Chapter 7 bankruptcy case under 11 U.S.C. § 362(d)(1). *See In re Kessler*, 76 B.R. 434, 437 (Bankr.E.D.Pa. 1987). We have just concluded that Case had a valid, first priority security interest in all of the equipment in issue except Backhoe II. Proof of a valid security interest plus an absence of payments generally entitles a secured creditor to relief from the automatic stay to recover secured property from a Chapter 7 debtor pursuant to § 362(d)(1). *See In re Cabrillo*, 101 B.R. 443, 450–51 (Bankr.E.D.Pa.1989).

Alternatively, Case presented unrebutted evidence that the Debtor has no equity in any of the equipment except a very small and constantly-diminishing equity in Roller I. These facts support Case's right to relief from the automatic stay under 11 U.S.C. § 362(d)(2). *See id.* 101 B.R. at 450.

## D. CONCLUSION

An Order consistent with this Opinion, granting Case relief as to all of the equipment in issue in Contracts I through IV except Backhoe II, will be entered.

## ORDER

AND NOW, this 15th day of March, 1993, after a hearing of February 18, 1993, on the Motion for Relief from the Automatic Stay filed by J.I. Case Credit Corporation ("Case") and Objections thereto by the Trustee and Union Bank & Trust Co. of Souderton, it is hereby

ORDERED AND DECREED that Case is entitled to relief from the automatic stay in regard to the following equipment:

1. Case Roller W252, Serial No. 841207548, which is the subject of the November 30, 1989, Contract.

2. Case Roller W252, Serial No. JKC 175120708, which is a subject of the August 31, 1990, Contract.

3. General Trailer 89–DOW, Serial No. 112DPM209LT0357454, which is a subject of the August 31, 1990, Contract.

4. Case Loader Backhoe 680H, Serial No. 9150998, which is a subject of the October 31, 1991, Contract.

5. Case Roller W50, Serial No. 840253001, which is a subject of the October 31, 1991, Contract.

6. Two Case Tampers SL2, Serial Nos. JKC0113910 and JKC0113317, which are subjects of the October 31, 1991, Contract.

7. Alitec Planer, Serial No. 1193, which is a subject of the December 31, 1991, Contract.
8. Case Pad Foot Roller 1102, Serial No. 840288100, which is a subject of the December 31, 1991, Contract.
9. General Trailer 35GSL, Serial No. 1125L2439ML037449, which is a subject of the December 31, 1991, Contract.