**In re David & Pamela McHENRY, Debtor(s).**

**John J. HUNTER, Trustee, Plaintiff(s),**

**v.**

**Pamela Jean McHENRY, et al., Defendant(s).**

**Bankruptcy No. 86–0138.
Related Case: 84–01981.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Feb. 10, 1987.

Hunter & Schank, Toledo, Ohio, for plaintiffs.

Gary Howe, Toledo, Ohio, for Pamela Jean.

Lawrence Gibson, Toledo, Ohio, for Toledo Telephone.

## MEMORANDUM OPINION
## AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion For Summary Judgment filed by the Plaintiff in the above entitled adversary action. It also comes before the Court upon the Motion for Relief From Stay filed by the Defendant Toledo Telephone Employees Credit Union (hereinafter TTECU). The Court conducted a Pre-Trial conference in the adversary action and a Hearing on the Motion For Relief From Stay. At those proceedings, the parties agreed that the disposition of the Motion is dependent upon the outcome in the adversary action. Pursuant to that agreement, the parties have filed their arguments respecting the merits of the Motion and have had the opportunity to respond to the argument made by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons the Court finds that the Motion For Summary Judgment should be granted and that the judgment should be entered for TTECU in both the adversary action

and the proceedings on the Motion For Relief From Stay.

## FACTS

The facts in this case, to the extent they have been developed and are necessary for summary disposition, do not appear to be in serious dispute. The Debtors filed their Chapter 13 Petition with this Court on December 26, 1984. During the execution of their Chapter 13 Plan, the Debtor Pamela Jean McHenry (hereinafter Debtor) made arrangements for the purchase of a new automobile. Although the record is unclear, it appears that these arrangements included terms which allowed the Debtor to take possession of the vehicle prior to the completion of the financing contracts. Specifically, the documents indicate that the Debtor received possession of the vehicle on or about March 14, 1986. However, the documents also indicate that the certificate of title to this vehicle was not issued until March 25, 1986.

On March 27, 1986, the Debtor executed a promissory note and security agreement in favor of TTECU respecting this vehicle. On that same day, a courier from the seller delivered to TTECU the certificate of title. In return for the certificate, TTECU gave to the courier a check in the amount of the purchase price of the automobile. On April 1, 1986, the Debtors converted their case to a proceeding under Chapter 7. However, on April 2, 1986, TTECU recorded their security interest on the certificate of title.

In an effort to collect assets for the estate, the Trustee filed the above entitled adversary action. In an effort to obtain possession of its collateral, TTECU filed its Motion For Relief From Stay. In the adversary action, the Trustee seeks to avoid the lien taken by TTECU relative to the vehicle in question. Specifically, the Trustee asserts that because TTECU did not record its lien within ten days from the time the Debtor took possession of the car, the protection available to purchase money lenders under the provisions of Ohio Revised Code § 1309.31(D) are insufficient to defeat his status under 11 U.S.C. § 544(a). TTECU opposes this action, arguing that the ten day perfection period offered under § 1309.31(D) does not begin to run until the time it tendered the check to the seller of the vehicle. As has been indicated, the parties have agreed that if TTECU's lien is found to be avoidable, the Motion For Relief From Stay should be denied. On the other hand, if the lien is found to be valid, the adversary Complaint should be dismissed and the Motion For Relief From Stay should be granted.

In support of the Motion For Summary Judgment, the Trustee argues that the recording of a lien subsequent to the conversion of the case constitutes a violation of the automatic stay, inasmuch as it allows TTECU to claim more than it was entitled to prior to the conversion. In an attempt to liken the post-conversion lien to a preference under 11 U.S.C. § 547(b), the Trustee argues that the contemporaneous exchange exception is inapplicable when his "strong arm" status intervenes in the perfection of a lien. In making this argument, the Trustee further contends that since more than ten days elapsed between the time the Debtor took possession and TTECU recorded the lien, the perfection cannot relate back to the time possession was taken. In support of these arguments, the Trustee has offered documents which demonstrate the dates of possession, the issuance of the check, the execution of the security agreement, and the recording of the lien.

TTECU opposes the Motion For Summary Judgment, arguing that because the perfection of a security interest in a motor vehicle is governed by provisions other than those which establish a ten day perfection period, the provisions relied upon by the Trustee are inapplicable to this case. In support of its argument, TTECU offers the affidavit of one of its employees. In that affidavit, the affiant refers to two facts. First, that the certificate of title was exchanged for a check on March 27, 1986. Second, that the certificate was offered for recording on March 28, 1986. Trustee's request for oral argument on this matter was denied on February 9, 1987.

### LAW

The provisions of Ohio Revised Code § 1309.31(D) state in pertinent part:

(D) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.

Under these provisions, a purchase money lender who perfects a lien within ten days from the time the debtor takes possession of the collateral is deemed to have perfected the lien at the time possession is taken. However, inherent in that provision is the requirement that a security interest exists at the time possession is taken. It also requires that the purchaser be a debtor of the secured creditor. On its face, the statute does not appear to provide for circumstances where the debtor obtains possession prior to the execution of the security agreement.

Under Ohio Revised Code § 1309.14(A), the provisions of which state in pertinent part:

(A) ... [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(1) the collateral is in the possession of the secured party pursuant to agreement or the debtor has signed a security agreement which contains a description of the collateral ... and

(2) value has been given; and

(3) the debtor has rights in the collateral.

In *National Acceptance Company of California v. Community Bank (Matter of Ultra Precision Industries, Inc.)*, 503 F.2d 414 (9th Cir.1974), and *Brodie Hotel Supply, Inc. v. United States*, 431 F.2d 1316 (9th Cir.1970), the debtors in those cases had obtained actual possession of the property prior to the creation of the security agreements. When the security agreements were created, they were executed contemporaneously with the tender of value by the creditor. That value enabled the debtors to purchase the property in question. In those cases, the Courts held that since the purchaser was not a debtor to the secured creditor at the time possession was taken, the ten day perfection period could not begin to run until such time as a debtor-creditor relationship existed. In doing so, the Courts also ratified the purchase money character of the transactions in those cases.

In addition to the analysis conducted by those Courts relative to the relevant sections of the Uniform Commercial Code, it is evident that the provisions of Ohio Revised Code § 1309.31(D) [U.C.C. § 9–312(4)] require a security interest to exist prior to a commencement of the ten day period. In order for a security interest to exist, there must be an attachment of rights afforded under the contract to the property used as collateral. As indicated in the statute, one of the requirements for attachment is that the secured creditor have given value. Attachment also requires the existence of an executed security agreement. Without a transfer of value, or a contract for security, there can be no security interest. Therefore, in attempting to compute the time period set forth in Ohio Revised Code § 1309.31(D), it would follow that until a security interest was created, the ten day period could not begin to run regardless of whether or not the Debtor had possession.

In the present case, it is evident that the Debtor received possession of the vehicle shortly before the execution of the security agreement and the transfer of value. Since the Debtor was, at the time she received possession, not legally obligated to TTECU, she was not a debtor within the contemplation of Ohio Revised Code § 1309.31(D). Furthermore, since there had been no execution of a security agreement at the time possession was taken, TTECU had no right to look to the vehicle for satisfaction of the debt. Accordingly, there was no security interest in the property at the time of delivery. As a result, the ten day period did not begin to run upon possession of the car. However, on March 27, 1986, the date on which a security agreement was executed and value was

**64**

given, all events necessary to give rise to TTECU's security interest had transpired. Therefore, that was the date on which the ten day perfection period began to run. Since TTECU properly perfected its interest within ten days from the time its interest was created, its perfection must, under Ohio Revised Code § 1309.31(D), be related back to the creation of that interest. Furthermore, since TTECU was properly perfected, its lien cannot be avoided under the provisions of 11 U.S.C. § 544(a).

█ It could be argued that the fact that the Debtor had possession of the property prior to the creation of the debt negates the purchase money character of the security interest. In that regard, the Court notes the provisions of Ohio Revised Code § 1309.05, which state in pertinent part:

A security interest is a "purchase money security interest" to the extent that it is:

(A) taken or retained by the seller of the collateral to secure all or part of its price; or

(B) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Under this statute, it does not appear that purchase money status is made dependent upon the time the debtor acquires possession of the property. Rather, it only appears to contemplate that the advanced value be used for the purpose of permitting the debtor to acquire rights in the property.

In the present case, it is readily apparent that the value extended by TTECU was for the purpose of allowing the Debtor to purchase the automobile. As stated in the affidavit, the check issued by TTECU was given to a courier from the seller in exchange for the certificate of title. A review of the Complaint finds that the Plaintiff apparently concedes that the vehicle in question was purchased by the Debtor with the funds from TTECU. A review of the entire case suggests that the transaction involved all three parties, and that the resulting circumstances were part of their effort to consummate a sale of the vehicle. In light of these facts, it must be concluded that the value extended by TTECU was intended to, and did in fact, enable the Debtor to acquire the car, regardless of whether or not she already had possession. Therefore, it must also be concluded that the loan in question was a purchase money transaction, and that TTECU was permitted to exercise the protection afforded under Ohio Revised Code § 1309.31(D).

In view of the foregoing analysis, it is readily apparent that there are not questions of material fact relative to the issues which are dispositive in this case. Since these facts demonstrate that TTECU is entitled to a finding that it properly perfected its lien, it must also be concluded that it is entitled to judgment as a matter of law.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Motion For Summary Judgment be, and is hereby, GRANTED.

It is FURTHER ORDERED that judgment be, and is hereby, entered for the Defendant Toledo Telephone Employees Credit Union.

It is FURTHER ORDERED that the Complaint in this case be, and is hereby, DISMISSED.

It is FURTHER ORDERED that the Defendant present to this Court a proposed judgment entry relative to the Motion For Relief From Stay within seven (7) days from the date of this Order.