Opinion filed January 12, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed January 12, 2006

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00190-CV 

 

                                                    __________

 

                      FIRST NATIONAL BANK IN MUNDAY, Appellant

 

                                                             V.

 

                                 LUBBOCK
FEEDERS, L.P., Appellee

 



 

                                          On
Appeal from the 39th District Court

 

                                                         Haskell
County, Texas

 

                                                   Trial
Court Cause No. 11,209

 



 

                                                                   O
P I N I O N

 








In this appeal, First National Bank in Munday and
Lubbock Feeders, L.P., claim competing security interests in the same
cattle.  The trial court granted summary
judgment to Lubbock Feeders, holding that it had a purchase money security
interest in the cattle and the proceeds from the sales of the cattle with
priority over the Bank=s
security interest in the cattle.  In
three appellate issues, the Bank argues that the trial court erred in granting
summary judgment.  Because Lubbock
Feeders met its summary judgment burden of establishing that it had a perfected
purchase money security interest in the cattle, we affirm the judgment of the
trial court.

                                                               Background
Facts 

The Bank sued Briscoe Cattle Exchange Corp. and
John William Cox for sums due and owing on various notes.  The Bank alleged that Cox had defaulted on
nine notes and that he had guarantor liability on two Briscoe Cattle Exchange
notes.  The Bank alleged that it had a
security interest in all livestock owned by Cox, wherever located and whenever
acquired.  The Bank sought a writ of
sequestration for all of Cox=s
livestock, including any livestock located in Lubbock County, Texas.  Lubbock Feeders intervened in the suit,
alleging claims against Cox for sums due and owing on various loans.  Lubbock Feeders also sought a declaratory
judgment that it had a superior purchase money security interest in Cox=s Lubbock County cattle.[1]








The Bank and Lubbock Feeders moved for summary
judgment.  Both parties claimed a
superior security interest in Cox=s
Lubbock County cattle.  The Bank did not
claim that it had a purchase money security interest in Cox=s Lubbock County cattle.  Lubbock Feeders argued that the summary
judgment evidence established the following: (1) that it had a purchase money
security interest in the cattle under Section 9.103(a) of the Uniform
Commercial Code (UCC)[2]
because its loans to Cox enabled him to acquire his interests in the cattle;
(2) that it perfected its security interest in the cattle under Sections 9.310
and 9.313 of the UCC[3]
by taking possession of the cattle and by filing financing statements covering
the cattle; (3) that it was not required to give the Bank notice of its
security interest under Section 9.324(d) of the UCC[4]
to obtain priority status; and (4) that, even though it was not required to
give the Bank notice of its security interest, it gave the Bank notice of its
security interest complying with Section 9.324(d).  In response, the Bank asserted the following:
(1) that Lubbock Feeders failed to perfect its security interest and (2) that
Lubbock Feeders failed to give the Bank the required notice of its security
interest under Section 9.324(d) of the UCC. 
Therefore, the Bank argued that it had the superior security interest in
the cattle.

The trial court granted summary judgment to
Lubbock Feeders.  The trial court also
entered an order severing the claims between the Bank and Lubbock Feeders from
the remainder of the action.  Therefore,
the summary judgment became final and appealable.

                                                                 Issues
Presented

The Bank attacks the trial court=s granting of summary judgment in three
appellate issues.  In its first issue,
the Bank argues that the trial court applied the wrong summary judgment
standard in making an Aimplied
finding of fact@ that
Lubbock Feeders had a superior right and interest in the cattle.  In its second issue, the Bank asserts that
the summary judgment evidence created a fact issue as to (1) whether Lubbock
Feeders had a perfected purchase money security interest in the cattle and (2)
whether Lubbock Feeders complied with requirements for priority of a purchase
money security interest in livestock.  In
its third issue, the Bank contends that Lubbock Feeders=s
summary judgment evidence B
the affidavit of Kyle Williams B
failed to meet its summary judgment burden of establishing that no genuine
issue of material fact existed.

                                                              Standard
of Review

This case involves the review of a traditional
motion for summary judgment.  We will
apply the well-recognized standard of review for traditional summary
judgments.  We must consider the summary
judgment evidence in the light most favorable to the non-movant, indulging all
reasonable inferences in favor of the non-movant, and determine whether the
movant proved that there were no genuine issues of material fact and that it
was entitled to judgment as a matter of law. 
Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546 (Tex. 1985); City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979). 

                                                         Affidavit
of Kyle Williams

Lubbock Feeders presented an affidavit from its
yard manager, Kyle Williams, in support of its motion for summary
judgment.  Williams stated that he had
familiarity with Lubbock Feeders=s
financed accounts with its customers and that his job duties required him to
stay familiar with the accounts.     








Williams explained that Lubbock Feeders operates a
commercial feed yard and offers its customers feeding programs with several
different payment options, including a cattle and feed financed option.  Under the cattle and feed financed option,
Lubbock Feeders advances a line of credit to its customer to finance the
customer=s
purchase of cattle and makes subsequent periodic loan advances for financing
feed costs and yardage.  Customers
choosing the cattle and feed financed option execute a loan and security
agreement granting Lubbock Feeders a security interest in the customer=s cattle.  Lubbock Feeders documents each money advance
to its customers with a loan certificate.

Williams explained in detail Cox=s relationship with Lubbock
Feeders.  Cox fed cattle at Lubbock
Feeders=s feedlot
under the cattle and feed financed option. 
If Cox wanted to purchase cattle and place those cattle with Lubbock
Feeders, then Lubbock Feeders would finance 80% of the purchase price of Cox=s interest in the cattle and reasonable
feeding costs.

In 2002 and 2003, Cox fed cattle on the following
lots, among others, at Lubbock Feeders=s
feed yard: Lot 101, Lot 151, Lot 277, and Lot 282.  Cox and Lubbock Feeders executed feeding
agreements covering all four lots.  Cox
had a revolving line of credit with Lubbock Feeders enabling him to borrow the
money necessary to purchase his interests in the cattle.  Cox signed loan and security agreements
evidencing the loans.  The security
agreements gave Lubbock Feeders a security interest in Cox=s cattle then owned or thereafter
acquired. 

Cox purchased all of the cattle from third party
vendors at sale barn auctions.  When Cox
wanted to purchase a group of cattle, he submitted an invoice to Lubbock
Feeders identifying the cattle by a specific head number, sex, pay weight, and
price.  As Cox purchased each set of
cattle, Lubbock Feeders prepared a loan certificate relating to that set of
cattle and showing the amount of the loan advance.  All of the cattle were delivered directly to
Lubbock Feeders.  Cox never had
possession of the cattle.  After Cox and
Lubbock Feeders signed a loan certificate relating to a set of cattle and
Lubbock Feeders received the set of cattle, Lubbock Feeders made an advance to
Cox enabling him to complete the purchase of the cattle from the third party
vendor.  Lubbock Feeders made 20 loan
advances to Cox on the four lots.  Each
advance related to a specific set of cattle.   









Lot 101

Lubbock Feeders and Cox, each as 50% owners,
placed 102 heifers with Lubbock Feeders 
for feeding and growing.  Lubbock
Feeders received and placed the 102 heifers at its feedlot as follows: (1) 70
head on June 28, 2002, and (2) 32 head on July 1, 2002.  Lubbock Feeders made money advances to Cox on
June 19, 2002 and July 9, 2002.  The
advances totaled $16,680.94.  All of the
cattle in Lot 101 were sold to packers.

Lot 151

Flintrock Cattle Company as a 50% owner, Harve
Williams as a 25% owner, and Cox as a 25% owner placed 107 steers with Lubbock
Feeders for feeding and growing.  Lubbock
Feeders received and placed the 107 steers at its feedlot as follows: (1) 21
head on September 30, 2002; (2) 28 head on October 3, 2002; (3) 21 head on
October 7, 2002; (4) 3 head on October 9, 2002; (5) 6 head on October 10, 2002;
and (6) 28 head on October 14, 2002. 
Lubbock Feeders made money advances to Cox on October 8, 2002; October
9, 2002; October 14, 2002; and October 18, 2002.  The advances totaled $12,418.36.  All of the Lot 151 cattle were sold to
packers.  

Lot 277

Flintrock Cattle Company and Cox, each as 50%
owners, placed 86 steers with Lubbock Feeders for feeding and growing.  Lubbock Feeders received and placed the 86
steers at its feedlot as follows: (1) 6 head on January 9, 2003; (2) 29 head on
January 16, 2003; (3) 2 head on January 20, 2003; (4) 4 head on January 24,
2003; and (5) 45 head on January 30, 2003. 
With respect to the Lot 277 cattle, Lubbock Feeders made money advances
to Cox on January 27, 2003, and January 31, 2003.  The advances totaled $22,625.77.  All of the Lot 277 cattle were sold to
packers.

Lot 282 

 Flintrock
Cattle Company and Cox, each as 50% owners, placed 94 heifers with Lubbock
Feeders for feeding and growing.  Lubbock
Feeders received and placed the 94 heifers at its feedlot as follows: (1) 43
head on January 15, 2003; (2) 25 head on January 20, 2003; (3) 4 head on
January 24, 2003; and (4) 22 head on January 30, 2003.  With respect to the Lot 282 cattle, Lubbock
Feeders made money advances to Cox on January 27, 2003, and January 31,
2003.  The advances totaled
$21,691.62.  All of the Lot 282 cattle
were sold to packers.








Loan Documents

Williams attached copies of documents detailing
Lubbock Feeders=s loans
to Cox as exhibits to his affidavit, including the feeding agreements, loan and
security agreements, loan certificates, and checks showing money advances to
Cox.  The documents detailed each
transaction in which Lubbock Feeders advanced money to Cox for his purchase of
cattle from the sale barns.  Williams=s affidavit, along with the attached
documents, traced Cox=s
purchase of each set of cattle that Lubbock Feeders placed into Lots 101, 151,
277, and 282.

                                          The
Bank=s
Objections to Williams=s
Affidavit

The Bank argues that Williams=s affidavit failed to provide competent
summary judgment proof on the purchase money security interest issues.  First, the Bank asserts that the affidavit
failed to demonstrate Williams was qualified or competent to testify on the
security interest issues.  Summary
judgment affidavits must set forth facts and show affirmatively how the affiant
obtained personal knowledge of those facts. 
Radio Station KSCS v. Jennings, 750 S.W.2d 760, 761-62 (Tex.
1988).  Williams=s
affidavit addressed Lubbock Feeders=s
relationship with its customer, Cox, and the loans Lubbock Feeders made to
Cox.  In the affidavit, Williams stated
that he was the yard manager for Lubbock Feeders; that he was familiar with
Lubbock Feeders=s
customer accounts; and that the performance of his job required him to be
familiar with the accounts.  A person=s position or job responsibilities can
peculiarly qualify him to have personal knowledge of facts and establish how he
learned of the facts.  Boswell v. Farm
& Home Sav. Ass=n,
894 S.W.2d 761, 768 (Tex. App.CFort
Worth 1994, writ denied).  Williams=s position and job responsibilities
with Lubbock Feeders particularly qualified him to have personal knowledge of
the facts relating to the loans to Cox, and the affidavit established how he
learned of those facts.  The affidavit
demonstrated that Williams had personal knowledge of Lubbock Feeders=s transactions with Cox.  Williams was competent and qualified to
testify about those transactions and the documents related to those
transactions.








Second, the Bank asserts that Williams=s affidavit contained conclusory
statements.  Affidavits consisting of
nothing more than conclusions or expressions of subjective belief are not
competent summary judgment proof. 
Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984).  The Bank objects to a number of Williams=s statements, including statements that
Lubbock Feeders had Aa
purchase-money lien and security interest@
and that ALubbock
Feeders perfected its purchase-money security interest.@  Standing alone, these statements are
conclusory.  However, as set forth above,
Williams provided detailed facts about the loan transactions in question, and
the documents relating to those transactions were attached as exhibits to the
affidavit.  The affidavit provided
specific facts tracing loan proceeds to Cox=s
specific purchases of cattle.  An
affidavit containing conclusory and subjective determinations of fact may
support a motion for summary judgment if the remaining statements contain
sufficient factual information to sustain the movant=s
burden of proof.  Marshall v. Sackett,
907 S.W.2d 925, 933 (Tex. App.C
Houston [1st Dist.] 1995, no writ); General Prod. Co. v. Black Coral Invs.,
715 S.W.2d 121, 123 (Tex. App.CHouston
[14th Dist.] 1986, writ ref=d
n.r.e.).  Although Williams=s affidavit contained some conclusory
statements, those statements were supported by facts, and the remaining
statements in the affidavit contained sufficient factual information to sustain
Lubbock Feeders=s burden
of proof.

Third, the Bank apparently asserts that, because
Williams was an interested witness, his affidavit will not support the granting
of a summary judgment.  Summary judgment
based on the uncontroverted affidavit of an interested witness is proper if the
evidence is clear, positive, direct, otherwise credible, free from
contradictions and inconsistencies, and could have been readily controverted.  Trico Techs. Corp. v. Montiel, 949 S.W.2d
308, 310 (Tex. 1997); Republic Nat=l
Leasing Corp. v. Schindler, 717 S.W.2d 606, 607 (Tex. 1986).  ACould
have been readily controverted@
does not mean that the summary judgment evidence could have been easily and
conveniently rebutted but, rather, indicates that the testimony could have been
effectively countered by opposing affidavit. 
Trico Techs. Corp., 949 S.W.2d at 310 (citing Casso v. Brand,
776 S.W.2d 551, 558 (Tex. 1989)).

Williams provided specific and detailed facts
about the loan transactions in his affidavit. 
The affidavit was clear, positive, direct, otherwise credible, and free
from contradictions and inconsistencies. 
The affidavit contained the type of information B
specific factual information about loans, including dates and amounts of loans B that is readily controvertible. Trico
Techs. Corp., 949 S.W.2d at 310. 
Therefore, the affidavit could support the granting of summary
judgment.  The trial court did not err in considering Williams=s affidavit as summary judgment
evidence.  We overrule the Bank=s third issue.








                                                            Security
Interest Issues

Lubbock Feeders had the summary judgment burden of
establishing each of the following: (1) that it had a purchase money security
interest in the subject cattle, (2) that it perfected its security interest in
the cattle, and (3) that its security interest in the cattle had priority over
the Bank=s
security interest.  Lubbock Feeders
argues that it had a purchase money security interest in the cattle under
Section 9.103 of the UCC.  Section 9.103
defines purchase money security interest in part as follows:

(a) In this section:

(1) APurchase-money
collateral@ means goods
or software that secures a purchase-money obligation incurred with respect to
that collateral.

 

(2) APurchase-money
obligation@ means an
obligation of an obligor incurred as all or part of the price of the collateral
or for value given to enable the debtor to acquire rights in or the use of the
collateral if the value is in fact so used.

 

(b)
A security interest in goods is a purchase-money security interest:

 

(1) to the extent that the goods are
purchase-money collateral with respect to that security interest.        

 

Thus, when a creditor makes a loan enabling a debtor to acquire
an interest in goods, the creditor may obtain a purchase money security
interest in the goods.  Section
9.103(a)(2).   

Lubbock Feeders asserts that it had a purchase
money security interest in the cattle because its loans to Cox enabled him to
acquire his interests in the cattle.  The
summary judgment evidence established that Lubbock Feeders made 20 money
advances to Cox with respect to the cattle involved in the four lots.  Williams=s
affidavit and the loan certificates demonstrated that each money advance
related to a specific set of cattle.  Cox
purchased the cattle from third party vendors at sale barn auctions before
receiving loan proceeds from Lubbock Feeders. 
Based on the timing of the loans, the Bank asserts that Cox acquired
interests in the cattle before receiving the loan proceeds from Lubbock
Feeders.  Therefore, the Bank argues that
the loans from Lubbock Feeders did not enable Cox to acquire interests in the
cattle.  








Section 9.103 of the UCC does not contain a
requirement that the debtor receive the loan proceeds before purchasing the
collateral.  Instead, Section 9.103(a)(2)
requires that the loan Aenable
the debtor to acquire rights in or the use of the collateral.@ 
Although the Texas courts have not addressed this issue, courts from
other jurisdictions have held that a creditor may obtain a purchase money
security interest when the debtor receives the loan proceeds after purchasing
the collateral.  In re Enter. Indus.,
Inc., 259 B.R. 163, 169 (Bankr. N.D. Cal. 2001); In re McHenry, 71
B.R. 60, 62-64 (Bankr. N.D. Ohio 1987); In re Sherwood, 79 B.R. 399, 400
(Bankr. W.D. Wis. 1986); In the Matter of Hooks, 40 B.R. 715, 721
(Bankr. M.D. Ga. 1984); De Kalb Bank v. Purdy, 562 N.E.2d 1223, 1226-27
(Ill. App. Ct. 1990); DeKalb Bank v. Klotz, 502 N.E.2d 1256, 1258-59
(Ill. App. Ct. 1986); Gen. Elec. Capital Commercial Auto. Fin., Inc. v.
Spartan Motors, Ltd., 675 N.Y.S.2d 626, 630-32 (N.Y. App. Div. 1998).  Thus, the timing of the loan does not
determine whether the creditor receives a purchase money security interest in
the collateral.  Rather, the key
consideration is whether the loan enables the debtor to acquire rights in the collateral.
Gen. Elec. Capital Commercial Auto. Fin., Inc., 675 N.Y.2d at 631-32; In
re McHenry, 71 B.R. at 64.  A
creditor receives a purchase money security interest when the loan advance is Aclosely allied@
with the debtor=s
purchase of the collateral at issue.   Gen.
Elec. Capital Commercial Auto. Fin., Inc., 675 N.Y.2d at 631-33; In re
Enter. Indus., Inc., 259 B.R. at 167-70. 


            The summary judgment evidence
established that Lubbock Feeders=s
loans to Cox enabled him to purchase the cattle.  Each loan advance related to a specific set
of cattle.  Lubbock Feeders made each of
the 20 loan advances to Cox within a short time after receiving the related set
of cattle at its feed yard.  This time period
ranged from the day Lubbock Feeders received a set of cattle until 18 days
after receiving a set of cattle.  Cox
signed a loan certificate with respect to each set of cattle.  The loan certificates showed the loan advance
amount and the specific cattle relating to the loan advance.  The loans were Aclosely
allied@ to Cox=s purchase transactions.  Gen. Elec. Capital Commercial Auto. Fin., Inc.,
675 N.Y.2d at 631-33; In re Enter. Indus., Inc., 259 B.R. at
167-70.  Lubbock Feeders met its summary
judgment burden of establishing that it had a purchase money security interest
in the cattle.                                    








Lubbock Feeders argues that it perfected its
purchase money security interest in the cattle by taking possession of the
cattle and by filing financing statements covering the cattle.  A secured party may perfect a security
interest in goods by taking possession of the goods or by filing a financing
statement.  Sections 9.310(a), (b)(6),
9.313(a); see also Kunkel v. Sprague Nat=l
Bank, 128 F.3d 636, 644 (8th Cir. 1997)(Feed yard perfected its purchase
money security interest in cattle by taking possession of the cattle); MBank
Abilene, N.A. v. Westwood Energy, Inc., 723 S.W.2d 246 (Tex. App.CEastland 1986, no writ).  

Cox purchased all of the subject cattle from third
party vendors at sale barn auctions. 
Lubbock Feeders received delivery of the cattle at its feed yard.  Cox never had possession of the cattle.  Thus, the summary judgment evidence
established that Lubbock Feeders perfected its security interest in the cattle
by taking possession of the cattle.  Sections
9.310(b)(6) and 9.313(a); Kunkel, 128 F.3d at 644.  Therefore, we need not address Lubbock
Feeders=s
contention that it also perfected its security interest by filing financing
statements nor the Bank=s
contention that the financing statements filed by Lubbock Feeders were
insufficient to perfect its security interest.

The Bank argues that Lubbock Feeders=s security interest did not have
priority over its security interest because Lubbock Feeders failed to comply
with the notice requirements set forth in Section 9.324(d) of the UCC.  In response, Lubbock Feeders argues that,
because Cox never had possession of the cattle, Section 9.324(d) of the UCC did
not require it to give the Bank notice of its security interest to maintain
priority status.  Section 9.324(d)
provides as follows:

Subject to Subsection (e) and except as otherwise
provided in Subsection (g), a perfected purchase-money security interest in
livestock that are farm products has priority over a conflicting security
interest in the same livestock, and, except as otherwise provided in Section
9.327, a perfected security interest in their identifiable proceeds and
identifiable products in their unmanufactured states also has priority, if:

 

(1) the purchase-money security interest is
perfected when the debtor receives possession of the livestock;

 

(2) the purchase-money secured party sends an
authenticated notification to the holder of the conflicting security interest;

 

(3) the holder of the conflicting security
interest receives the notification within six months before the debtor receives
possession of the livestock; and 

 








(4) the notification states that the person sending the
notification has or expects to acquire a purchase-money security interest in
livestock of the debtor and describes the livestock.                                         

The issue is whether the notification requirement
in Section 9.324(d) applies when the creditor maintains possession of the
livestock.  While Texas courts have not
decided this issue, the Eighth Circuit Court of Appeals decided it in the Kunkel
case.    Kunkel involved facts similar to the
facts in this case.  A feedlot perfected
a purchase money security interest in cattle by taking possession of the
cattle.  Kunkel, 128 F.3d at
644.  The issue was whether the feedlot=s purchase money security interest in
the cattle had priority over a bank=s
security interest in the same cattle.  Kunkel,
128 F.3d at 641.  The Kansas UCC applied
in Kunkel.  Under the Kansas UCC,
the subject cattle were classified as Ainventory.@ 
Kunkel, 128 F.3d at 639.  A
creditor with a purchase money security interest in inventory could acquire
priority lien status by sending notice of its security interest to holders of
competing security interests within five years before the debtor received
possession of the inventory.  Kunkel,
128 F.3d at 644.

In Kunkel, the feedlot argued that the UCC=s notice provision did not apply to its
purchase money security interest because the debtor never received possession
of the collateral.  Therefore, the
feedlot asserted that it could maintain priority status without providing
notice of its security interest to holders of competing security
interests.  The Eighth Circuit Court of
Appeals interpreted the UCC=s
notification requirement Ato
be triggered by actual possession of the inventory by the debtor.@ 
Kunkel, 128 F.3d at 645. 
Because the Kunkel debtor never obtained possession of the
cattle, the feedlot could maintain its priority status without notifying the
bank of its security interest.  Kunkel,
128 F.3d at 645-46.

We agree with the reasoning of the Kunkel
court.  Section 9.324(d)(3) provides that
the holder of the conflicting security interest must receive the notice of the
purchase money security interest within six months before the debtor receives
possession of the livestock.  Cox never
possessed the cattle.  Because Cox never
received possession of the cattle, the notification requirement in Section
9.324 was not triggered.  Therefore,
Lubbock Feeders was not required to give the Bank notice of its security
interest to maintain priority status.  








Based on our holding, we need not address Lubbock
Feeders=s
alternative contention that it provided the Bank notice of its security
interest complying with Section 9.324(d).  


Lubbock Feeders met its summary judgment burden of
establishing a superior purchase money security interest in the cattle and in
the proceeds from the sales of the cattle. 
The trial court properly granted summary judgment to Lubbock
Feeders.  We overrule the Bank=s first and second issues.  

                                                               This
Court=s Ruling

The judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

 

January 12, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











    
[1]Lubbock Feeders had possession of Cox=s Lubbock County cattle on its feedlot.  Pursuant to an agreed order, Lubbock Feeders
sold the cattle and deposited the sales proceeds, less feeding costs and
yardage costs due to Lubbock Feeders, into the registry of the court.  That amount totaled $104,886.43.





    
[2]Tex. Bus. & Com. Code Ann. ' 9.103(a), (b) (Vernon 2002).





    
[3]Tex. Bus. & Com. Code Ann. '' 9.310, 9.313 (Vernon Supp. 2005).





    
[4]Tex. Bus. & Com. Code Ann. ' 9.324 (Vernon 2002).